Brian S. Kabateck, SBN 152054
bsk@kbklawyers.com
Shant A. Karnikian, SBN 285048
sk@kbklawyers.com
Cheryl A. Kenner, SBN 305758
ck@kbklawyers.com
**KABATECK BROWN KELLNER LLP**
644 S. Figueroa Street
Los Angeles, CA 90017
Tel.: (213) 217-5000
Fax: (213) 217-5010

Nicholas J.P. Wagner, SBN 109455
Andrew B. Jones, SBN 076915
Daniel M. Kopfman, SBN 192191
Lawrence M. Artenian, SBN 103367
**WAGNER, JONES, KOPFMAN,
& ARTENIAN LLP**
1111 E. Herndon, Ste. 317
Fresno, CA 93720
Tel.: (559) 449-1800
Fax: (559) 449-0749

Attorneys for Plaintiffs JASBIR SINGH, BANY LOPEZ, JULIO VIDRIO, JAMES SLIGER, DERRICK LEWIS, JERRY LEININGER, KRISTOPHER SPRING, JERRY WOOD, CAPPELLI BURLESS, ROBERT HASKINS, DOUGLAS LUIS, PAUL BONNER, CHRISTOPHER CROSS, LEO LEWIS, RICHARD LOVE, WILFRED MCGIRT, NICHOLAS RICH, and LATRINA PHILLIPS

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JABIR SINGH, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION, LLC; and MORGAN SOUTHERN, INC.,<br><br>        Defendants.<br><br><br>NICHOLAS E. RICH, an individual, on behalf of himself and all others similarly situated, | Lead Case No.: 1:15-cv-01497-DAD-BAM<br><br>Assigned to the Hon. Dale A. Drozd<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     May 1, 2018<br>Time:    9:30 a.m.<br>Judge:   Hon. Dale A. Drozd<br>Courtroom:  5, 7th Floor<br><br>Complaint Filed: February 9, 2015<br><br>Member Case No. 1:16-cv-01900-DAD-BAM |

- 1 -

|   |   |   |
|---|---|---|
| | Plaintiffs, | |
| | v. | |
| | ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION, LLC; MORGAN SOUTHERN, INC.; and DOES 1 through 50, inclusive, | |
| | Defendants. | |
| | LATRINA PHILLIPS, an individual; on behalf of himself and all others similarly situated, | Lead Case No.: 1:17-cv-00164-DAD-BAM |
| | Plaintiff, | |
| | v. | |
| | ROADRUNNER INTERMODAL SERVICES, LLC; and MORGAN SOUTHERN, INC., | |
| | Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2018, 2018 at 9:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 5 of the above-entitled court located at 2500 Tulare Street, 7th Floor, Fresno, CA 93721, Plaintiffs JASBIR SINGH, BANY LOPEZ, JULIO VIDRIO, JAMES SLIGER, DERRICK LEWIS, JERRY LEININGER, KRISTOPHER SPRING, JERRY WOOD, CAPPELLI BURLESS, ROBERT HASKINS, DOUGLAS LUIS, PAUL BONNER, CHRISTOPHER CROSS, LEO LEWIS, RICHARD LOVE, WILFRED MCGIRT, NICHOLAS RICH, and LATRINA PHILLIPS ("Plaintiffs") will, and hereby do, move for an order: (1) preliminarily approving the proposed Class Action Settlement ("Settlement Agreement" or "Settlement") in the above-captioned case, (2) approving appointment of CPT Group, Inc. ("CPT Group") as the settlement administrator, (3) approving and directing distribution of the class notice to the Settlement Class, (4) approving the proposed Class Representatives and Co-Class Counsel, and (5) setting a final fairness and approval hearing.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Federal Rules of Civil Procedure, Rule 23, which provides for court approval of the settlement of a class action, Plaintiffs and Defendants ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION, LLC; MORGAN SOUTHERN, INC. ("Defendants") (collectively, the "Parties") respectfully request that this Court grant preliminary approval of the proposed Class Action Settlement Agreement.

The basis for this Motion is that the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Settlement Class as a whole, and that the procedures proposed are adequate to ensure the opportunity of the proposed Settlement Class Members to participate in, opt out of, or object to the Settlement.

This Motion will be based on the Memorandum of Points and Authorities set forth herein; the concurrently filed Declaration of Cheryl A. Kenner; Declaration of Daniel M. Kopfman; Declaration of Brian S. Kabateck; the proposed fully executed Class Action Settlement Agreement, attached to the Declaration of Brian S. Kabateck as **Exhibit 1**, including the Notice of Proposed Class Action Settlement (attached thereto as **Exhibit A**), the proposed Notice of Estimated Individual Settlement Payment (attached thereto as **Exhibit B**); and such evidence or oral argument as may be presented at the Preliminary Approval hearing; and on the complete records and file herein.


Dated: April 13, 2018              **KABATECK BROWN KELLNER LLP**


                                   By:    _____
                                          Cheryl A. Kenner

                                   Attorneys for Plaintiffs and all others similarly situated

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    SUMMARY OF THE PROPOSED SETTLEMENT ........................................ 6

    A.    The Settlement Class Definitions ................................................................ 6

    B.    Stipulation of Settlement ............................................................................ 6

    C.    Value of the Settlement to the Class .......................................................... 9

    D.    Class Notice .............................................................................................. 10

    E.    Procedure for Uncashed Checks ............................................................... 11

    F.    Attorneys' Fees and Litigation Expenses ................................................. 12

III.   STANDARDS FOR APPROVAL OF SETTLEMENT ............................... 15

    A.    The Two-Step Approval Process ............................................................... 15

    B.    Co-Class Counsels' Thorough Investigation and Litigation Efforts ................... 15

IV.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY. ........................................................... 18

    A.    The Class Satisfies the Requirements of Rule 23(a) ................................. 18

        1.    The Class Is Ascertainable and Sufficiently Numerous. ......................... 18

        2.    Common Questions of Law and Fact Exist. ............................................ 19

        3.    Plaintiffs' Claims Are Typical of the Claims of the Class. ..................... 21

        4.    Plaintiffs Will Adequately Represent the Class. ..................................... 22

    B.    The Class Satisfies the Requirements of Rule 23(b)(3) ............................ 22

        1.    Common Questions Predominate Over Individual Issues. ...................... 23

V.     THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE. ......................................................................... 24

    A.    The Strength of Plaintiffs' Cases and Complexities of Further Litigation ......... 25

    B.    The Benefits Conferred by the Settlement ................................................ 27

    C.    The Experience and Views of Counsel ..................................................... 27

    D.    The Absence of "Obvious Defects" or Any Indicia of Unfairness ........... 28

    E.    The Settlement Falls Within the Range of Possible Approval. ................. 29

VI.    CONCLUSION ........................................................................................... 30

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Cases**

*Amchem Prods. v Windsor*
    (1997) 521 U.S. 591 ...................................................................... 22, 23, 24

*Arrendondo v. Delano Farms Co.*
    (E.D. Cal. Apr. 19, 2011) 2011 WL 1486612 ..................................... 23

*Baby Neal for & by Kanter v. Casey*
    (3rd Cir. 1994) 43 F.3d 48 ................................................................ 19

*Blackie v. Barrack*
    (9th Cir. 1975) 524 F.2d 891 ............................................................ 23

*Hammon v. Barry*
    (D.D.C. 1990) 752 F.Supp. 1087 .................................................. 26, 28

*Hanlon v. Chrysler Corp.*
    (9th Cir. 1998) 150 F.3d 1011 ...................................................... 19, 22

*Hanon v. Dataprods. Corp.*
    (9th Cir. 2002) 976 F.2d 497 ............................................................ 21

*In re Armored Car Antitrust Litigation*
    (N.D. Ga. 1979) 472 F.Supp. 1357 .................................................. 26

*In re Chicken Antitrust Litigation*
    (N.D. Ga. 1980) 560 F.Supp. 957 ..................................................... 26

*In re Tableware Antitrust Litig.*
    (N.D. Cal. 2007) 484 F.Supp.2d 1078 .............................................. 29

*In re Vitamin Cases*
    (2003) 110 Cal.App.4th 1041 ........................................................... 12

*Lafitte v. Robert Half Int'l, Inc.*
    (2016) 205 Cal.Rptr.3d 555 .............................................................. 12

*Lealao v. Beneficial California, Inc.*
    (2000) 82 Cal.App.4th 19 .................................................................. 12

*Lerwill v. Inflight Motion Pictures Inc.*
    (9th Cir.1978) 582 F.2d 507 .............................................................. 24

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    (9th Cir. 2001) 244 F.3d 1152 .......................................................... 23

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    (7th Cir. 1987) 834 F.2d 677 ............................................................ 26

*Parra v. Bashas', Inc.*
    (9th Cir. 2008) 536 F.3d 975 ............................................................ 19

*Paul, Johnson, Alston & Hunt v. Graulty*

(9th Cir. 1989) 886 F.2d 268 ..................................................................... 12

*Priddy v. Edelman*
(6th Cir. 1989) 883 F.2d 438 ..................................................................... 26

*Rodriguez v. Hayes*
(9th Cir. 2010) 591 F.3d 1105 ................................................................... 19

*Rodriguez v. West Publ'g Corp.*
(9th Cir. 2009) 563 F.3d 948 ..................................................................... 30

*Six Mexican Workers v. Arizona Citrus Growers*
(9th Cir. 1990) 904 F.2d 1301 ................................................................... 12

*Staton v. Boeing Co.*
(9th Cir. 2003) 327 F.3d 938 ..................................................................... 22

*Steinberg v. Carey*
(S.D.N.Y. 1979) 470 F. Supp. 471 ............................................................ 26

*Valentino v. Carter-Wallace, Inc.*
(9th Cir. 1996) 97 F.3d 1227 ..................................................................... 24

*Vasquez v. Coast Valley Roofing, Inc.*
(E.D. Cal. 2009) 670 F.Supp.2d 1114 ....................................................... 29

*Vizcaino v. Microsoft Corp.*
(9th Cir. 2002) 290 F.3d 1043 ................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*
(2011) 131 S.Ct. 2541 ................................................................................ 30

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................................... 1, 3, 21

Cal. Lab. Code § 226.7 .............................................................................. 20

Cal. Lab. Code § 226.8(a)(1) ..................................................................... 20

Cal. Lab. Code § 2802 ............................................................................... 20

Cal. Lab. Code 226(a) .......................................................................... 2, 20

Fed. R. Civ. P. 23 ............................................................................ 3, 15, 30

Fed. R. Civ. P. 23(a) .................................................................................. 18

Fed. R. Civ. P. 23(a)(3) .............................................................................. 21

Fed. R. Civ. P. 23(a)(4) .............................................................................. 22

Fed. R. Civ. P. 23(b)(3) .................................................................. 18, 22, 23

**Other Authorities**

1 Alba Conte & Herbert B. Newberg

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

(3d ed. 1992) Newberg on Class Actions § 3.13 ...................................................................21

4 Alba Conte & Herbert B. Newberg
(4th ed. 2002) Newberg on Class Actions § 11.26 ........................................................15

*Manual for Complex Litigation*
(3d ed. 1995) ..................................................................................................................15

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs JASBIR SINGH, BANY LOPEZ, JULIO VIDRIO, JAMES SLIGER, DERRICK LEWIS, JERRY LEININGER, KRISTOPHER SPRING, JERRY WOOD, CAPPELLI BURLESS, ROBERT HASKINS, DOUGLAS LUIS, PAUL BONNER, CHRISTOPHER CROSS, LEO LEWIS, RICHARD LOVE, WILFRED MCGIRT, NICHOLAS RICH, and LATRINA PHILLIPS ("Plaintiffs") respectfully submit this Motion seeking preliminary approval of a proposed settlement ("Settlement") of a class action filed on behalf of approximately 796 current and former truck drivers of Defendants ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION, LLC; MORGAN SOUTHERN, INC. ("Defendants") (collectively with Plaintiffs, the "Parties,") relating to the alleged misclassification of drivers as "independent contractors" by Defendants; failure to provide meal and rest breaks; failure to pay overtime and minimum wages; failure to pay all wages upon separation; failure to furnish timely and accurate wage statements; failure to pay all wages owed every pay period; failure to reimburse business expenses, and for violation of Business and Professions Code section 17200 *et seq.* under California's Unfair Competition Act.

On February 9, 2015, Plaintiffs JASBIR SINGH, BANY LOPEZ, JULIO VIDRIO, JAMES SLIGER, DERRICK LEWIS, JERRY LEININGER, KRISTOPHER SPRING, JERRY WOOD, CAPPELLI BURLESS, ROBERT HASKINS, and DOUGLAS LUIS (the "*Singh* Plaintiffs") filed the *Singh v. Roadrunner Intermodal Services, LLC; et al.* class action on behalf of all similarly situated current and former truck drivers employed by ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION, LLC; AND MORGAN SOUTHERN, INC. ("Defendants") in the Superior Court of California, County of San Francisco, Case No. CGC-15-544563 (the "*Singh* Action"). On April 15, 2015, Defendants removed the Action to the United States District Court, Northern District of California. (Dkt. No. 1.) On October 2, 2015, the Action was transferred to the United States District Court for the Eastern District of California (Sacramento). (Dkt. No. 30.) On February 18, 2016, the Action was reassigned to Honorable Dale A. Drozd sitting in the United States District Court for the Eastern District of California (Fresno).

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

(Dkt. No. 42.)

On September 18, 2015, Plaintiffs PAUL BONNER, CHRISTOPHER CROSS, LEO LEWIS, RICHARD LOVE, WILFRED MCGIRT, and NICHOLAS RICH (the "*Rich* Plaintiffs") filed the *Rich v. Roadrunner Intermodal Services, LLC; et al.* class action on behalf of all similarly situated current and former truck drivers employed by Defendants in the United States District Court for the Central District of California, Case No. 2:15-cv-07330-DMG-JPR (the "*Rich* Action"). (Declaration of Brian S. Kabateck ("Kabateck Decl."), ¶ 4.)

On January 8, 2016, Plaintiff LATRINA PHILLIPS filed the *Latrina Phillips v. Roadrunner Intermodal Services, LLC; et al.* class action on behalf of all similarly situated current and former truck drivers employed by Defendants in the United States District Court for the Central District of California, Case No. 2:16-CV-01072-SVW-MRWx (the "*Phillips* Action"). On May 20, 2016, Defendants filed their Motion for Summary Judgment. (*Phillips* Dkt. No. 14.) On August 17, 2016, the Hon. Stephen V. Wilson denied Defendants' Motion for Summary Judgment. (Dkt. No. 24.)

On December 16, 2016, the *Rich* Plaintiffs filed their Motion for Class Certification, however, this was never fully briefed nor heard, because the *Rich* Action was transferred the following week. (Dkt. No. 53.) On December 22, 2016, Honorable Dolly M. Gee, under the first-to-file rule, transferred the *Rich* Action to the United States District Court for the Eastern District California. (Dkt. No. 60.)

On February 9, 2017, the Honorable Dale A. Drozd, ordered the *Singh* Action*, Rich* Action, and *Phillips* Action related to promote efficiency and economy for the court and parties. (Dkt. No. 65.) On March 28, 2017, Honorable Dale A. Drozd ordered the *Singh* Action and the *Rich* Action, consolidated. (Dkt. No. 78.)

In their respective operative Complaints, the *Singh*, *Rich*, *and Phillips* Plaintiffs (on behalf of himself and all others similarly situated and similarly aggrieved) seek damages, restitution, penalties, pre- and post-judgment interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court based on claims for: (1) misclassification of employees; violation of Labor Code Section 226(a)(1); (2) failure to provide meal periods; (3) failure to provide rest breaks; (4) failure to pay overtime wages; (5) failure to pay minimum wages; (6) failure to pay all wages upon separation; (7)

failure to furnish timely and accurate wage statements; (8) failure to pay all wages owed every pay period; (9) failure to reimburse business expenses; (10) unlawful deductions from wages; (11) penalties under the Private Attorneys General Act ("PAGA"); and (12) violation of California's Unfair Competition Law under California Business & Professions Code section 17200, premised on the preceding wage-and-hour claims.  (Kabateck Decl., ¶ 4.)

Co-Class Counsel are Kabateck Brown Kellner LLP and Wagner Jones Kopfman & Artenian LLP and Defendants' counsel is Scopelitis, Garvin, Light, Hanson & Feary, P.C., all of whom have extensive experience litigating wage and hour class actions, and especially in the transportation context.  Co-Class Counsel and Defendants' counsel have litigated the three Actions since their respective inceptions.  (Kabateck Decl., ¶ 5; Declaration of Daniel M. Kopfman ("Kopfman Decl.), ¶ 3.)  To the greatest extent possible, Co-Class Counsel avoided duplication of work by coordinating their efforts throughout the prosecution of these Actions.  (*Ibid.*)

The Settlement was reached after three mediation sessions several months apart separated by a great number of depositions and extensive discovery.  Plaintiffs and their counsel in the *Singh* and *Rich* Actions and Defendants participated in the first mediation on July 12, 2016 with the Hon. Peter D. Lichtman (Ret.).  (Kabateck Decl., ¶ 6.)  The same Parties participated in a second mediation on September 14, 2016 again with the Hon. Peter D. Lichtman (Ret.).  (*Ibid.*)  The first and second mediations did not result in a resolution of the Actions.  (*Ibid.*)  Following those mediations, both Parties proceeded with tens of depositions of Plaintiffs, witnesses, and Defendants' current and former employees and Persons Most Knowledgeable in California and Georgia.  (Declaration of Cheryl A. Kenner ("Kenner Decl."), ¶ 6.)  On January 31, 2018, Co-Class Counsel in the *Singh*, *Rich*, and *Phillips* Actions, and Defendants and their counsel participated in a third mediation with well-respected and experienced mediator, Mark S. Rudy.  The mediation ended with Mr. Rudy's mediator's proposal, which the Parties accepted on February 14, 2018.  (Kabateck Decl., ¶ 7.)  Thereafter, the Parties executed a Memorandum of Understanding.  Counsel were aware of (1) the potential cost of future litigation, (2) the risk of moving forward with the class certification motion filed and pending, (3) the risk of decertification if certified, and (4) the risks and expenses of continued litigation through trial and appeal.  (*Id.*)

Specifically, Defendants have agreed to pay $9,250,000, which includes (i) the total value of all Individual Settlement Payments; (ii) attorneys' fees ($3,083,333.33) and costs ($90,000) awarded by the Court to Co-Class Counsel; (iii) settlement administration costs ($12,000); (iv) an $7,500 Enhancement Payment awarded by the Court to each of the 18 Named Plaintiffs, totalling $135,000; and (v) civil penalties of $100,000 recoverable under the Private Attorneys General Act ("PAGA") to the Labor Workforce and Development Agency ("LWDA"). The complete terms of the proposed Settlement are set forth in the fully executed Stipulation of Class Action Settlement and Release of Claims ("Settlement Agreement" or "Agreement"), which is attached to the Declaration of Brian S. Kabateck as **Exhibit 1**. (Kabateck Decl., ¶ 2, **Exhibit 1**, Settlement Agreement ("SA").) This is a non-reversionary class settlement, with no claims-made process. (Kabateck Decl., ¶ 21.)

Co-Class Counsel allege that actionable violations of the California Labor Code, the California Business and Professions Code, and the California Industrial Welfare Commission ("IWC") Wage Orders occurred here based on evidence showing that the work performed and the conditions of employment were that of an "employee." (*Id.*, at ¶ 9.) Plaintiffs' allegations include that Defendants provided drivers with trucks through a lease arrangement with preferred third-party leasing companies; Defendants directed and controlled the way drivers performed their work; Plaintiffs and other drivers reported to Defendants' offices; Defendants were able to discipline and terminate Plaintiffs; the services Plaintiffs and other drivers performed were a regular part of Defendants' business; Plaintiffs and other drivers did not incur a profit or loss *per se* on the deliveries; Defendants provided any other equipment needed to perform their work; Defendants deducted from Plaintiffs and other drivers' paychecks amounts for fuel, truck lease payments, insurance on the trucks, tolls, etc. and did not reimburse Plaintiffs and other drivers for expenses including fees charged at the fuel, other insurance, heavy vehicle use taxes, and fees. (*Ibid.*)

Defendants deny each of the claims asserted against them in these Actions and deny all liability in these Actions. (*Id.*, at ¶ 10.) Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in these Action. (*Ibid.*) Defendants contend that

they complied in good faith with California wage and hour laws, including but not limited to, the

California Labor Code, the California Business and Professions Code, and the California IWC Wage

Orders. (*Ibid.*)  Additionally, Defendants contend that the Class Members retained significant

discretion in performing driving services under Defendants' DOT authority, including the time,

place, and manner in which they performed those services, that several Class Members did business

with Defendants' as limited liability companies and not individuals, that some Class Members

owned multiple tractors and in fact hired other drivers to drive those tractors, and that Class

Members spent significant time performing driving services outside California and that California

wage and hour laws therefore either do not apply or significantly limit the damages recoverable by

Class Members in these Actions. (*Ibid.*)  These legal obstacles were considered within the rubric of

analyzing the reasonableness of this Settlement. (*Ibid.*)

   Given these very real litigation risks, Co-Class Counsel believe that the Settlement of

$9,250,000 is a fair and reasonable one. (*Id.*, at ¶ 11.)  Defendants have concluded that further

conduct of these Actions would be protracted and expensive and that it is desirable to settle in

order to limit further expense, inconvenience, distraction, and to permit the operation of

Defendants' business without further expensive litigation and the distraction and diversion of their

personnel with respect to matters at issue in these Actions.  Defendants have also taken into

account the uncertainty and risks inherent in any litigation, especially in complex cases such as

these Actions.  Defendants have, therefore, determined that it is desirable and beneficial to them

that these Actions be settled in the manner and upon the terms and conditions set forth in the

Settlement Agreement.

   The Parties have engaged in extensive discovery, formal and informal, and the exchange of

information and documentation, which has allowed the parties to seriously evaluate the claims

alleged in these Actions.  (Kabateck Decl., ¶¶ 6–8, 17.)  After several negotiations and mediations

spanning years, the Parties reached an agreement and subsequently jointly drafted and executed

the Settlement Agreement.  (*Id.*)  Both Co-Class Counsel and Defense Counsel believe that the

settlement is fair, adequate, and reasonable and in the best interest of the Class Members in light of

all known facts and circumstances, including the risk of significant delay and Defendants' asserted

defenses as well as Defendants' current financial circumstance following the revelation to the public that they overstated net income by $66.5 million as explained in further detail in Section III.B. below. (*Id.*, at ¶¶ 11, 18.) The Parties have also agreed on CPT Group, Inc. ("CPT Group") as the Settlement Administrator. (*Id.*, at ¶ 25.) All counsel have used CPT Group as the settlement administrator in other cases for similar settlements, including those involving wage-and-hour claims. (*Id.*)

The parties have finalized a formal Stipulation and Agreement for Class Action Settlement or "Settlement Agreement" ("SA"). Likewise, the parties have prepared and request that this Court approve the Notice of Proposed Class Action Settlement (**Exhibit A** to SA) and the Notice of Estimated Individual Settlement Payment (**Exhibit B** to SA). The Parties respectfully request that this Court approve these jointly prepared proposed documents to be disseminated to the Class consistent with the manner and timing as set forth in this Memorandum. For the reasons more fully discussed below, Plaintiffs request that the Court grant this Motion for Preliminary Approval of Class Action Settlement in all respects and enter the submitted preliminary approval order filed concurrently herewith.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

### A. The Settlement Class Definitions

The Parties agree that the Settlement Class should be defined as follows:

> *All current and former California residents who worked for the Defendants in the position of owner-operator and/or independent contractor truck driver at any time during the Class Period.*

Based on Defendants' records as of February 2018, there are 796 Class Members who worked as independent contractor drivers for Defendants during the Class Period.

### B. Stipulation of Settlement

The Settlement describes in detail the terms of the proposed settlement reached by the Parties and the details of the recovery for the Class. (SA.) The Settlement Agreement is made in compromise of all disputed claims included in the *Singh*, *Rich*, *and Phillips* Actions' operative Complaints. All Settlement Class Members seek the same legal remedies under the same state laws.

The payments to be made by Defendants under this Settlement will include all amounts sought by Plaintiffs and the Class in these Actions, including but not limited to alleged unpaid compensation, including deductions for business expenses, overtime and minimum wage compensation, compensation for missed, late, on-duty, and/or short meal periods and rest breaks, failure to timely pay wages at termination, and failure to provide timely and accurate wage statements; interest; penalties, attorneys' fees; litigation costs and expenses; Class Representatives' Enhancement Payments; settlement administration costs; and any court-mandated employee and/or employer tax withholdings thereupon, including, without limitation, the employees' and employers' shares of payroll taxes. (*Id.*, at § I.O.) The material terms of the Settlement are as follows:

1. Defendants shall pay $9,250,000 to settle the Actions to the Settlement Administrator, which includes amounts to be paid to Class Members, the awards for Attorneys' fees and costs and Named Plaintiffs Enhancement Payments, and the settlement administration expenses, no portion of which will revert back to Defendants. (*Id.*, at §§ I.O., II.A.) This $9,250,000 is based on the assumption that the Class comprises 796 drivers with 41,846 Qualifying Work Weeks ("QWW"). (*Id.*, at § II.A.)

2. The Settlement Administrator will be responsible for calculating Individual Settlement Payments to be paid to each Participating Class Member, which is based on the number of QWW that each Participating Class Member was in the Class Position during the Class Period. (*Id.*, at §§ I.P., I.AA., II.A.)

3. The Gross Settlement Amount is non-reversionary—none of it will revert to Defendants. In addition, it is not a claims-made settlement. To participate in the Settlement, Class Members need only not opt out. (*Id.*, at ¶ I.O., II.A.)

4. A judgment will be entered on the Settlement releasing Defendants from any claims by the Class Members. (*Id.*, at § III.C.)

5. The Settlement Administrator shall be CPT Group, Inc. Defendants will pay the Settlement Administrator for reasonable settlement administration fees not to exceed $12,000, which shall be deducted and paid solely from the Gross Settlement Amount. Any fees incurred by CPT Group in excess of the foregoing amount shall also be paid solely from the Gross

Settlement Amount.  (*Id.*, at §§ I.FF., I.GG., II.E.)

6. Co-Class Counsel will file an application requesting that the Court award an Individual Enhancement to each of the *Singh*, *Rich*, *and Phillips* Plaintiffs in an amount not to exceed $7,500, payable within seven (7) days after Final Approval of the Settlement, which Defendants will not oppose.  The Class Representatives shall receive the Enhancement Payment and the compensation they stand to receive as a Participating Class Members. (*Id.*, at § I.I., I.M., II.B.)

7. Co-Class Counsel will file an application requesting that the Court award Co-Class Counsel attorneys' fees in the total amount not to exceed one-third (1/3) of the ultimate Gross Settlement Amount.  (*Id.*, at § II.D.)  Accordingly, assuming the Gross Settlement Amount remains at $9,250,000, then Co-Class Counsel will seek a total award of attorneys' fees in the amount of $3,083,333.  (*Ibid.*)  Defendants will not oppose this application. (*Ibid.*)

8. A total of $100,000 will be allocated to the LWDA for civil penalties under PAGA, of which 75% (equal to $75,000) will be paid to the LWDA and 25% (equal to $25,000) will be paid to Class Members.  (*Id.*, at § II.C.)  The Settlement Administrator will deduct these amounts from the Gross Settlement Amount and direct them to the LWDA and Class Members in their Individual Settlement Payments.  (*Id.*)

9. Co-Class Counsel will file an application requesting that the Court award Co-Class Counsel reasonable costs incurred, as proven, not to exceed a total of $90,000.  (*Id.*, at § II.D.)

10. The "Class Period" runs from February 9, 2011 through April 15, 2018.  (*Id.*, at § I.G.)

11. Defendants agree to release, waive, and acquit and discharge all Class Representatives and Participating Class Members from the Released Claims including, but not limited the Equipment Lease Agreements, Independent Contractor Line Haul Agreements, Independent Contractor Agreements, or third-party lease agreements to which any of the Released Parties are guarantors by Defendants arising out of the contracts for hire from the beginning of time through the Effective Settlement Date.  (*Id.*, at §§ I.CC., III.B.)

8

**C. Value of the Settlement to the Class**

The proposed Settlement provides for a relatively easy procedure to participate in or exclude oneself from the settlement, which imposes minimal burdens on the Class. (Kabateck Decl., ¶ 21.) Individual Settlement Payments will be paid from the Non-Reversionary Settlement Fund to Participating Class Members based on the number of Qualifying Weeks Worked ("QWW") in the Class Position during the Class Period credited to the Participating Class Member as a percentage of the total Qualifying Weeks Worked in the Class Position during the Class Period credited to all Participating Class Members. (*Ibid.*) The Gross Settlement Amount is $9,250,000. (SA, §§ I.O., II.A.) The Net Settlement Amount means the portion remaining after attorneys' fees and costs, the Class Representative's Enhancement Payment, Settlement Administrator's costs, and PAGA penalties are deducted from the Gross Settlement Amount, which shall then be allocated to Individual Settlement Payments for Participating Class Members. (*Id.* at § I.Q.)

There will be at least $5,854,666.67 available for the Participating Class Members. (Kabateck Decl., ¶ 24.) Assuming none of the 796 Class Members opts out and all 41,846 weeks remain unchanged, the estimated Individual Settlement Payments per Qualifying Work Week is $139.91 for an average of $7,355.11 per Class Member. (*Ibid.*) This table summarizes the Settlement Agreement amounts:

| | | |
|---|---|---|
| Gross Settlement Amount | $ | 9,250,000.00 |
| Attorneys' Fees | $ | (3,083,333.33) |
| Attorneys' Costs Incurred | $ | (90,000.00) |
| Class Representatives' Enhancement Awards | $ | (135,000.00) |
| Settlement Administrator's Costs | $ | (12,000.00) |
| PAGA Penalties Payable to the LWDA | $ | (75,000.00) |
| **Net Settlement Amount** | **$** | **5,854,666.67** |

Individual Settlement Payments to be paid to each Participating Class Member will be allocated as follows:

- One-half (1/2) to unreimbursed business expenses, which will not be subject to withholding (Form 1099 to be issued);

- One-fourth (1/4) to interest, which will not be subject to withholding (Form 1099 to be issued); and

- One-fourth (1/4) to penalties, which will not be subject to withholding (Form 1099 to be issued).

(SA, § I.Q., II.A.)  Each Participating Class Member, Co-Class Counsel, and Class Representative payment recipient will be responsible for remitting to state and/or federal taxing authorities any applicable taxes which may be owed on the non-wage portion of any payment received pursuant to this Agreement, except as provided by this Settlement Agreement.  (*Ibid.*)  Class Members who may have questions about their tax liability should consult independent tax counsel.  (*Ibid.*)

The claims that Participating Class Members will release are set forth in the Settlement Agreement and discussed herein.  (*Id.* at §§ I.BB., III.A.)  In exchange for Individual Settlement Payments, Participating Class Members will release Released Parties from all Released Claims specified in the Settlement Agreement.  (*Ibid.*)

**D. Class Notice**

The notice to the Class will be disseminated by the best means possible—direct mail notice. In Co-Class Counsels' experience in comparable cases, notice has been successfully mailed to approximately 90% of the class; a similar result is anticipated here.  (Kabateck Decl., ¶ 26.)

Each individual will be given notice by first-class mail of the pendency of these Actions, the terms of the proposed Settlement (including the Settlement benefits, the scope of claims released, and attorneys' fees and costs), and their right to opt out to the Settlement, object to the Settlement, and dispute the number of Qualifying Work Weeks.  (*Ibid.*; SA, **Exhibits A** and **B**.)  Upon the Court's approval of the proposed Notice Packet, Co-Class Counsel will have CPT Group translate the English version into Spanish, both versions of which will be disseminated to each Class Member. (Kabateck Decl., ¶ 13.)  Co-Class Counsel will provide to the Court the final English and Spanish versions of the Notice Packet with the Settlement Administrator's Declaration of Compliance when Co-Class Counsel file their Motion for Final Approval.  (*Id.*)

To assist the Participating Class Members in understanding the lawsuit and Settlement, and to facilitate informed decisions about the exercise of their rights, the Settlement Administrator will maintain web, electronic mail, and toll-free telephone support services.  (Kenner Decl., ¶ 5.) Telephone support will include an available live operator, able to speak English and Spanish, during

regular business hours to guide callers through the notices to find any information they seek, and if necessary, to answer anticipated questions based on information jointly provided by the Parties. (*Id*.) The Settlement Administrator will maintain a website that allows users to download settlement documents and other key documents from the Court's file in these Actions. (*Id*.) The Settlement Administrator will redirect Class Members' questions it cannot answer to Co-Class Counsel. (*Id*.)

Notice will be mailed to Class Members by first-class mail, at their last-known addresses provided in Defendants' records provided to the Settlement Administrator, updated through U.S. Postal Service's National Change of Address ("NCOA") database. (Kabateck Decl., ¶ 26.) Notices returned as undeliverable shall be re-mailed to the best available address after performing skip-tracing services offered by publicly available databases. (*Ibid.*; SA, § IV.D.) The Settlement Administrator will employ similar updating procedures at the time of mailing settlement payments to Participating Class Members. (Kabateck Decl., ¶ 26; SA, § IV.L.,)

In this manner, the Settlement provides for the highest possible likelihood of providing *actual* notice to the Settlement Class Members of this Settlement, a real opportunity to exercise their rights, and, if they remain Class Members and the Settlement is approved, *actual* receipt of settlement payments. This is an ideal notice program, reasonably calculated to *actually* reach approximately 90% of the Class, without (further) compromising Class Members' privacy. (Kabateck Decl., ¶ 26.)

### E. Procedure for Uncashed Checks

This matter was settled with no claim form requirement and with no residual to revert to Defendants. (SA, § II.A.) Any portion of a Class Member's settlement not paid as a result of an invalid address or any checks issued by the Settlement Administrator to Participating Class Members not cashed within one hundred and eighty (180) days will be void. (*Id*., at § IV.L.) Pursuant to the Settlement Agreement, the proceeds from any uncashed checks from the Net Settlement Amount shall escheat to the State of California, State Controller's Office, Unclaimed Property Division, in the name(s) of the corresponding Participating Class Member(s), which shall remain available for those Participating Class Members to claim thereafter. (*Ibid.*; Kabateck Decl., ¶ 21.)

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### F.  Attorneys' Fees and Litigation Expenses

Co-Class Counsel recognizes that the issue regarding the award of attorneys' fees and costs will be determined at the time of final approval, upon a full presentation of the issues to the Court and also recognizes that the attorneys' fees requested here is above the Ninth Circuit's 25% benchmark.  (Kabateck Decl., ¶ 16.)  For the fairness hearing, Co-Class Counsel will submit a joint motion setting forth the lodestar amount and requesting an award of attorneys' fees in an amount not to exceed one-third (1/3) of the Gross Settlement Amount, which equals $3,083,333 for all attorneys' fees.  (*Id*.; SA, § I.N., II.D., IV.K.)  Defendants will not oppose this amount of attorneys' fees.  (Kabateck Decl., ¶ 16.)  The compensation sought for Class Counsel is not excessive, as their request for one-third of the settlement fund is close to the Ninth Circuit's standard benchmark of 25%, a mere "starting point," as fair and reasonable for a common fund attorneys' fee award. (*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047, 1048; *Six Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311; *Paul, Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 272.)  This is well within the range of the percentage of fees from common funds under California and federal law.  In a recent opinion, the California Supreme Court held that trial courts "retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." (*Lafitte v. Robert Half Int'l, Inc.* (2016) 205 Cal.Rptr.3d 555, 575).)  That is, "when an attorney fee is awarded out of a common fund preserved or recovered by means of litigation . . . the award is not per se unreasonable merely because it is calculated as a percentage of the common fund."  (*Id.*, at 2.)  "[I]n cases in which the value of the class recovery can be monetized with a reasonable degree of certainty, the trial court has discretion to . . . ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace of comparable litigation."  (*In re Vitamin Cases* (2003) 110 Cal.App.4th 1041, 1060 (quoting *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 49–50).)

Briefly, Co-Class Counsel have vigorously prosecuted these three actions, which were hard fought at all stages over three years and warrant attorneys' fees greater than the 25% benchmark. (Kabateck Decl., ¶ 17; Kopfman Decl., ¶ 8.)  As explained in greater detail in Section III., Co-Class Counsel pursued all three actions on a contingency fee basis.  (*Ibid.*)  Co-Class Counsel took three

30(b)(6) depositions on 26 topics with 32 requests for production, took nine employee depositions in California and Georgia, defended 18 depositions of Named Plaintiffs and one declarant, propounded and responded to 113 individual sets of formal written discovery and several sets of informal discovery. (*Ibid.*) Moreover, Plaintiff Phillips fought and prevailed in challenging Defendants' Motion for Summary Judgment and the *Rich* Plaintiffs filed their Motion for Class Certification before the *Rich* Action was transferred to this Court. (*Ibid.*) Defendants staunchly deny each of the claims asserted against them in these Actions and deny all liability and contend that they complied in good faith with California wage and hour laws. Defendants contend that Class Members retained significant discretion in performing driving services under Defendants' DOT authority, including the time, place, and manner in which they performed those services, that several Class Members did business with Defendants' as limited liability companies and not individuals, that some Class Members owned multiple tractors and in fact hired other drivers to drive those tractors, and that Class Members spent significant time performing driving services outside California and that California wage and hour laws therefore either do not apply or significantly limit the damages recoverable by Class Members in these Actions.

These legal obstacles were considered within the rubric of analyzing the reasonableness of this Settlement. (*Id.*) Likewise, several pieces of information came to light that Co-Class Counsels seriously considered in deciding whether this $9.25 million settlement should be accepted including:

- news and confirmatory investigation, revealing that in January 2017 that Defendants' parent company overstated its net income by $66.5 million from 2011 to 2016 and made other accounting errors and discrepancies resulting in an ongoing financial and operational reorganization and the firing of the parent company's chief financial officer;

- following the overstatement, the subsequent dramatic drop in Defendants' parent company's stock price that was trading above $25 in mid-2015 now valued steadily below $3 with no suggestion that it will recover as it has not hit $10 in over a year;

- the existence of other pending lawsuits against Defendants (including shareholder derivative lawsuits filed and other employment actions); and

- purchase accounting errors involving the acquisition of two trucking companies James Brooks Company and Central Cal Transportation and the failure to report losses on their balance sheets. (*Ibid.*)

Collectively, the firms involved in this litigation have expended thousands of hours and a substantial amount of resources prosecuting these three actions. (*Id.*, at ¶ 19.) The full breakdown of hours will be set forth in Plaintiffs' Motion for Final Approval. (*Id.*) Finally, to further support that this settlement was hard-fought, it took three mediations to ultimately arrive at this excellent result for the Class. (*Id.*) Of course, the Class's reaction to this settlement will be known only after Notice Packets are mailed to the Class.

In the final approval motion, Co-Class Counsel will also request an award of reimbursement of costs incurred by Co-Class Counsel in an amount not to exceed $90,000 and will substantiate the amounts incurred through an itemization of costs incurred by all law firms. (SA, § II.D; Kabateck Decl., ¶ 20.) Also, as will be explained in greater detail in the final approval motion, Plaintiffs will request an award of $7,500 for each Named Plaintiff in these three Actions. Each Named Plaintiff expended a great deal of time and effort in assisting Co-Class Counsels' prosecution of these three cases. (Kabateck Decl., ¶ 20; Kenner Decl., ¶ 8; Kopfman Decl., ¶ 9.) The Named Plaintiffs responded to discovery requests; each prepared and sat for deposition and had to take off work to do so; and each accepted the risks of protracted class action litigation. (*Ibid.*) Finally, Named Plaintiffs, and only Named Plaintiffs, enter into a broad release of claims, including a section 1542 waiver as to any claims they do not know or suspect to exist in their favor against any of the Released Parties. (*Id.*; SA, § II.D.)

As is proper practice for class action attorneys, Co-Class Counsel did not discuss attorneys' fees until after an agreement was reached in principal with respect to the direct class settlement benefits and the Gross Settlement Amount. (Kabateck Decl., ¶¶ 14, 24; Kopfman Decl., ¶ 7.) The actual amount of any fee and expense award is subject to review and approval by this Court, after Class Members have had an opportunity to object or otherwise state their opinions regarding this and every other aspect of the Settlement. (*See* SA, § IV.G.) Any amounts not awarded by the Court as fees and costs will remain in the Net Settlement Amount for the Class. (*Id.* at § II.D.)

**III. STANDARDS FOR APPROVAL OF SETTLEMENT**

**A.  The Two-Step Approval Process**

Any settlement of class litigation must be reviewed and approved by the Court.  (Fed. R. Civ. P. 23(e).)  This is done in two steps: (1) an early (preliminary) review by the Trial Court and (2) a final review after notice has been distributed to the Class Members for their comments or objections. (*Manual for Complex Litigation* (3d ed. 1995) § 30.41.)

Thus, preliminary approval by the Trial Court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements.  As Professor Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing."  (4 Alba Conte & Herbert B. Newberg (4th ed. 2002) Newberg on Class Actions, § 11.26.)

Here, the Parties have reached such an agreement, which Plaintiffs now submit to this Court, in connection with this unopposed Motion.  The Settlement Agreement sets forth all terms of the Settlement reached by the Parties.  (Kabateck Decl., ¶ 2; *see generally* SA.)

**B.  Co-Class Counsels' Thorough Investigation and Litigation Efforts**

Through the prosecutions of the *Singh*, *Rich*, and *Phillips* Actions, the Parties engaged in sufficient litigation efforts, including investigation, discovery, and discussions to assess the relative merits of Plaintiffs' claims and Defendants' defenses to them, as well as the likelihood of recovery. (Kabateck Decl., ¶¶ 6–8, 17; Kopfman Decl., ¶¶ 5, 6.)

On February 9, 2015, the *Singh* Plaintiffs filed the *Singh* Action in the Superior Court of California, County of San Francisco, Case No. CGC-15-544563.  (Kopfman Decl., ¶ 4.)  On April 15, 2015, Defendants removed the *Singh* Action to the United States District Court for the Northern District.  (*Ibid.*)  On October 2, 2015, the *Singh* Action was transferred to the United States District Court for the Eastern District of California (Sacramento).  Finally, on February 18, 2016, the *Singh* Action was transferred to the Eastern District of California (Fresno) and assigned to the Honorable Dale A. Drozd.  (*Ibid.*)

On September 18, 2015, the *Rich* Plaintiffs filed the *Rich* Action in the United States District Court for the Central District of California, Case No. 2:15-cv-07330-DMG-JPR, which was assigned to the Honorable Dolly M. Gee. (Kenner Decl., ¶ 4.) On December 16, 2016, the *Rich* Plaintiffs filed their Motion for Class Certification. (*Rich* Dkt. No. 53; Kenner Decl., ¶ 4.) However, on December 21, 2016, before Defendants could file their Opposition, the Honorable Dolly M. Gee, transferred the *Rich* Action to the United States District Court for the Eastern District California (Fresno) under the first-to-file rule. (*Rich* Dkt. No. 60; Kenner Decl., ¶ 4.) Accordingly, the Court did not rule on Plaintiffs' class certification motion. (Kenner Decl., ¶ 4.)

On January 8, 2016, the *Phillips* Plaintiff filed the *Phillips* Action in the Superior Court of California, County of Los Angeles, Case No. BC606470. (Kenner Decl., ¶ 4.) On February 17, 2016, Defendants removed the *Phillips* Action to the United States District Court for the Central District of California, Case No. 2:16-CV-01072-SVW-MRWx, which was ultimately assigned to the Honorable Stephen V. Wilson. (*Phillips* Dkt. No. 7; Kenner Decl., ¶ 4.) On May 20, 2016, Defendants filed a Motion for Summary Judgment, to which Plaintiff filed her Opposition on July 1, 2016 and Defendants filed their Reply on July 15, 2016. (*Phillips* Dkt. Nos. 14, 19, 20; Kenner Decl., ¶ 4.) The Honorable Stephen V. Wilson denied Defendants Motion for Summary Judgment on August 16, 2016. (*Phillips* Dkt. No. 24; Kenner Decl., ¶ 4.) On October 12, 2016, the Honorable Stephen V. Wilson transferred the *Phillips* Action to the United States District Court for the Eastern District California (Fresno). (*Phillips* Dkt. No. 27; Kenner Decl., ¶ 4.)

The Parties exchanged both formal and informal discovery throughout the prosecution of the *Singh*, *Rich*, and *Phillips* Actions. (Kenner Decl., ¶ 7; Kopfman Decl., ¶ 5.) The Parties exchanged an extensive amount of formal written discovery, including Initial Disclosures, thousands of pages of documents produced, classwide data, and a class list. (*Ibid.*) Among the Actions, Defendants propounded to Plaintiffs 21 sets of special interrogatories, 19 sets of requests for production of documents, and 13 sets of Requests for Admission. (*Ibid.*) Plaintiffs provided responses to Defendants' 13 sets of special interrogatories, 13 sets of requests for production of documents, and 10 sets of Requests for Admission. (*Ibid.*) Plaintiffs propounded to Defendants 21 sets of special interrogatories, 10 sets of requests for production of documents, and three sets of

Requests for Admission. (*Ibid.*) Defendants responded to Plaintiffs' 22 sets of special interrogatories, including supplemental responses, eight sets of requests for production of documents, and three sets of Requests for Admission. (*Ibid.*) Moreover, the parties engaged in numerous meet and confer exchanges regarding this written discovery. (*Ibid.*)

The Parties participated in three arms'-length mediations and numerous other settlement discussions over a span of about 1.5 years. (Kabateck Decl., ¶ 6; Kopfman Decl., ¶ 6.) Plaintiffs and their counsel in the *Singh* and *Rich* Actions and Defendants and their counsel participated in the first mediation on July 12, 2016 with the Hon. Peter D. Lichtman (Ret.). The same Parties participated in a second mediation on September 14, 2016 again with the Honorable Peter D. Lichtman (Ret.). (*Ibid.*) The first and second mediations did not result in a resolution of the Actions, so Plaintiffs continued to prosecute their Actions and move forward with filing their Motion for Class Certification. (*Ibid* .) Finally, on January 31, 2018, counsel in the *Singh*, *Rich*, and *Phillips* Actions, and Defendants and their counsel participated in a third mediation with well-respected and experienced mediator, Mark S. Rudy. (*Ibid.*) The mediation ended with Mr. Rudy's mediator's proposal, which the Parties thoughtfully considered. (*Ibid.*) With the benefit of the foregoing experience and discovery and 30 total depositions at the time of the ongoing settlement negotiations in the weeks following the third mediation, counsel were well-placed to properly evaluate the strengths and weaknesses of their respective claims and defenses debated at length at mediation, the value of the proposed Settlement, and the risks and expenses of continued litigation through trial and appeal. (*Ibid.*) Furthermore, Plaintiffs learned at the mediation that Defendants have been experiencing financial hardships, including the fallout—in the form of derivative shareholder lawsuits—from recently revealing to the public that Defendants overstated net income by $66.5 million dating back to the beginning of 2014. (*Ibid.*) Following the mediation, Plaintiffs further investigated the veracity of Defendants' claims, which Plaintiffs were then able to substantiate. (*Ibid.*) Plaintiffs seriously considered Defendants' current financial circumstance and depressed stock price at the time of the mediation and the weeks thereafter in deciding to accept the mediator's proposal. (*Ibid.*) The Parties ultimately accepted the mediator's proposal on February 14, 2018. (*Ibid.*) Thereafter, the Parties executed a Memorandum of Understanding and jointly

17

drafted and executed the Settlement Agreement. (*Ibid.*)

In sum, the investigation, prosecution, and mediations have included, among other efforts, (a) multiple meetings with Plaintiffs; (b) exchanging information; (c) analyzing Defendants' legal positions taken; (d) investigating the viability of class treatment of the Claims asserted in these Actions; (e) defending 18 depositions of Named Plaintiffs and taking depositions of nine current and former employees and three 30(b)(6) depositions of Defendants' Persons Most Knowledgeable (PMK) on 26 topics with 32 requests for production; (f) researching the applicable law with respect to the Claims asserted in these Actions and the potential defenses thereto; (g) moving for class certification; (h) opposing Defendants' Motion for Summary Judgement; (i) assembling and analyzing an extensive amount of classwide data to calculate potential classwide damages; and (j) propounding and responding to a collective total of 113 separate sets of formal written discovery. (Kabateck Decl., ¶ 8.) Therefore, Co-Class Counsel have sufficiently investigated the potential and actual claims and defenses thereto, zealously prosecuted their respective actions through the litigation stage, and have remained engaged throughout the settlement stage. (*Id.*, ¶¶ 8, 17.)

## IV. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY.

When presented with a proposed settlement, the court must ascertain whether the proposed settlement class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. (*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019, 1022.) Plaintiffs respectfully request that the Court enter an order provisionally certifying a class defined as all current and former California residents who worked for the Defendants in the position of owner-operator and/or independent contractor truck driver at any time during the Class Period.

### A. The Class Satisfies the Requirements of Rule 23(a)

Federal Rules of Civil Procedure, Rule 23(a), enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. (Fed. R. Civ. P. 23(a).) Each of these requirements is met here.

#### 1. The Class Is Ascertainable and Sufficiently Numerous.

Plaintiffs assert, and Defendants do not oppose for settlement purposes, that the proposed

Settlement Class is ascertainable and sufficiently numerous. A class must be so numerous that joinder of all members individually is "impracticable." (Fed. R. Civ. P. 23(a)(1).) No specific numerical threshold is required; each case must be examined. (*General Tel. Co. v. E.E.O.C.* (1980) 446 U.S. 318, 330.) In determining whether numerosity is satisfied, a court may consider reasonable inferences drawn from the facts before it. (*Gay v. Waiters' & Dairy Lunchmen's Union* (9th Cir. 1977) 549 F.2d 1330, 1332 n.5.) Here, there are approximately 796 Class Members, which makes joinder impracticable. (Kabateck Decl., ¶ 24.) Additionally, the class definition is sufficiently specific to enable the Parties, Class Members, and the Court to readily determine the parameters of the class. Indeed, the Class Members are readily ascertainable from Defendants' records, which includes the Class List that Defendants provided to Co-Class Counsel during the litigation and most recently, an updated version just prior to the January 31, 2018 mediation. (*Id.*, at ¶ 27.)

### 2. Common Questions of Law and Fact Exist.

Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." (*Hanlon*, 150 F.3d at 1019-20.) All questions of fact and law need not be common to satisfy the rule. (*Id.*) The named plaintiff need only share at least one question of fact or law with the prospective class. (*Rodriguez v. Hayes* (9th Cir. 2010) 591 F.3d 1105, 1122 (citing *Baby Neal for & by Kanter v. Casey* (3rd Cir. 1994) 43 F.3d 48, 56).) A plaintiff may establish commonality even though individual factual situations differ where a class seeks a common legal remedy for a common wrong. (*Parra v. Bashas', Inc.* (9th Cir. 2008) 536 F.3d 975, 979.)

Plaintiffs contend, and Defendants do not dispute for settlement purposes only, that the Settlement Class Members claims all stem from a common set of circumstances and occurrences. By definition, all worked as independent contractor drivers for Defendants. Plaintiffs contend that Defendants misclassified its truck drivers and failed to provide them meal and rest breaks, or pay them proper wages and overtime wages.

Specifically, Plaintiffs contend, and Defendants do not dispute for settlement purposes only, that commonality is satisfied. The claims of Plaintiffs and Class Members all flow from the same facts and legal claims arising from Defendants' alleged misclassification of drivers as "independent

contractors" in violation of Labor Code § 226.8(a)(1), and whether, as a result of such alleged misclassification, Defendants failed to comply with other provisions of the Labor Code include:

a. Whether Defendants misclassified employees as "independent contractors," in violation of Labor Code § 226.8(a)(1);

b. Whether Plaintiffs and each Class Member were not paid minimum wage for each hour worked or part thereof during which they were required to perform acts at the direction and for the benefit of Defendants;

c. Whether Defendants engaged in a pattern and practice of failing to pay Plaintiffs and the members of the Class who worked as drivers in California for the total hours worked during the Class period;

d. Whether Defendants violated Labor Code sections 226.7 and/or 512, Industrial Welfare Commission ("IWC") Order No. 9, section 11 by failing to provide timely, off-duty 30-minute meal periods to Plaintiffs and members of the Class who worked as drivers in California during the Class period and to provide 10-minute, uninterrupted rest breaks as contemplated by California law for work periods in excess of four (4) hours or major fraction thereof;

e. Whether Defendants failed to properly compensate Plaintiffs and the members of the Class who worked as drivers in California during the Class Period for missed, untimely, or on-duty meal periods and/or rest breaks as required by California law;

f. Whether Defendants violated Labor Code section 226(a) by issuing inaccurate wage statements to Plaintiffs and members of the Class that failed to accurately state total hours worked and/or to include payments for all hours worked, premium wages for noncompliant or missed meal periods and/or rest breaks throughout the Class Period;

g. Whether Defendants violated Labor Code section 2802 for failure to reimburse Plaintiffs and the Class for business expenses incurred in performing their job; Whether Defendants violated Labor Code section 221 for unlawfully deducting amounts from Plaintiffs and Class Members' wages for business-related expenses incurred in the performance of their job duties; and

h.  Whether Defendants engaged in unfair practices and violated California Business &
Professions Code section 17200 by failing to comply with the Labor Code Provisions set
forth above and in the operative complaint.

This common course of conduct is at the core of the allegations that Defendants violated California wage and hour laws, including but not limited to, the California Labor Code, the California Business and Professions Code, and the IWC Wage Orders, which create numerous questions of law and fact common to all Settlement Class Members.  All Settlement Class Members seek the same legal remedies under the same state laws.  (Kabateck Decl., ¶ 12.)  The complex questions implicated by the facts and law in these cases strongly suggest that Settlement Class Members could not do substantially better than this Settlement by litigating individually.  (*Id.*, at ¶ 21.)  Thus, Plaintiffs contend, and Defendants do not dispute for settlement purposes only, that the commonality and predominance requirements for certification, particularly in the less intensive context of a Settlement Class are therefore satisfied.

### 3.  Plaintiffs' Claims Are Typical of the Claims of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative part[y] be typical of the claims or defenses of the class."  (Fed. R. Civ. P. 23(a)(3).)  Typicality turns on whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class.  (1 Alba Conte & Herbert B. Newberg (3d ed. 1992) Newberg on Class Actions § 3.13, 3-76.)  Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" as long as the named plaintiff alleges "that the same unlawful conduct was directed at or affected both [him] and the class sought to be represented."  (*Id.*, at 3–77.)  Under the rule's permissive standards, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  (*Hanon v. Dataprods. Corp.* (9th Cir. 2002) 976 F.2d 497, 508.)  Typicality is determined by the violation alleged to have occurred.  (*Id.*)  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  (*Id.*)

Here, Plaintiffs submit, and Defendants do not dispute for settlement purposes only, that each

of their claims arise out of the same type of factual and legal circumstances of each Class Member. Plaintiffs contend that they regularly missed meal periods and rest breaks without proper compensation, had business expenses deducted unlawfully, and worked overtime without proper compensation, and, based on their understanding of Defendants' operations with respect to Plaintiffs and each Class Member, each Class Member suffered the same injuries. As such, for purposes of certifying the Settlement Class, the typicality requirement is satisfied.

### 4. Plaintiffs Will Adequately Represent the Class.

A class representative must be able to "fairly and adequately" protect the interests of all members in the class. (Fed. R. Civ. P. 23(a)(4).) The Ninth Circuit set a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" (*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 957 (citing *Hanlon*, 150 F.3d at 1020).) Both requirements are met here.

Here, Plaintiffs submit, and Defendants do not dispute for purposes of certifying the Settlement Class, that they possess the same type of interests and suffered the same type of injuries as the other Class Members. In addition, Plaintiffs have prosecuted this matter diligently through their counsel. Co-Class Counsel have extensive experience in class action wage and hour litigation, including federal and state misclassification and wage and hour class actions. (Kabateck Decl., ¶¶ 2, 29; Kopfman Decl., ¶¶ 10–14.)

### B. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(3).

Plaintiffs seek provisional certification of the Class under Federal Rule of Civil Procedure, Rule 23(b)(3). Class certification is proper under Rule 23(b)(3)[1] "whenever the actual interests of the parties can be served best by settling their differences in a single action." (*Hanlon*, 150 F.3d at 1019, 1022.) There are two fundamental conditions for certification under Rule 23(b)(3): (1)

---

[1] This motion is made in connection with a proposed class settlement. It is therefore unnecessary to address or decide the fourth consideration contained in Rule 23(b)(3)—"manageability" of a trial—as there will be no trial if this settlement is approved. *Amchem Prods. v Windsor* (1997) 521 U.S. 591, 620.

questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. R. Civ. P. 23(b)(3).) Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." (*Amchem*, 521 U.S. at 615.)

The standard for class certification in the settlement context is a significantly lower threshold that in a contested proceeding or a trial context. The reason for the significantly lower threshold for class certification than in a contested proceeding or trial is that no trial is anticipated in the settlement context, so any case management issues inherent in determining if the class should be certified need not be confronted. (*Amchem*, 521 U.S. at 620.)

The very liberal standard expressed in *Amchem* is plainly satisfied here. The Settlement Class should be conditionally certified as requested.

### 1. Common Questions Predominate Over Individual Issues.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152, 1162, cert. denied, 534 U.S. 973, 122 S.Ct. 395, 151 L. Ed. 2d 299 (2001).) Individualized or deviating facts will not preclude class treatment if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof. (*See, e.g.*, *Arrendondo v. Delano Farms Co.* (E.D. Cal. Apr. 19, 2011) 2011 WL 1486612, *15.) Where there is common conduct of wrongdoing affecting all members of a class, common questions predominate. (*Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 905.)

The predominance requirement is satisfied here. As discussed above, Plaintiffs allege that the Class Members are entitled to the same legal remedies based on the same alleged wrongdoing. The aforementioned policies, and the questions of law and fact they raise, are the heart of this case and apply uniformly to Plaintiffs and all Class Members, making certification appropriate.

23

**2. A Class Action Is the Superior Mechanism to Resolve This Controversy Efficiently.**

A plaintiff satisfies Rule 23(b)(3)'s superiority requirement when he shows that "classwide litigation of common issues will reduce litigation costs and promote greater efficiency," or that "no reasonable alternative exists." (*Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F.3d 1227, 1234–35.) When evaluating the propriety of certification of a settlement class, a court may properly consider that there will be no trial. (*Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").) Courts recognize that employer practices and policies in wage and hour cases often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient. (*See, e.g.*, *Lerwill v. Inflight Motion Pictures Inc.* (9th Cir.1978) 582 F.2d 507, 512–13 (upholding the district court's decision to certify a class of workers seeking overtime pay and finding that "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated").)

As discussed above, Plaintiffs allege that they and the other Class Members suffered the same injuries and common issues predominate. Further, the Class consists of approximately 796 current and former drivers, making individual cases impractical, as they would place a significant burden on the court system. It is also unlikely that Class Members would pursue individual cases given that the approximate average hourly pay rate for the class is relatively low, making it doubtful Class Members would have the economic resources to pursue individual actions. A class action will preserve judicial resources, save time, and reduce waste and limit duplication of evidence and effort. Thus, class treatment is superior.

## V. THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE.

The settlement is fair, reasonable, and adequate for the reasons stated in accompanying Declaration of Brian S. Kabateck filed in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. (Kabateck Decl., ¶¶ 11, 21.) The settlement for each participating Class

1  Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk relative to

2  class certification, and the costs of litigation.  (*Ibid.*)  The settlement that has been reached, subject

3  to this Court's approval, is the product of a great deal of effort and smart, efficient attorney work.

4  (*Ibid.*)  After expeditiously but prudently litigating this matter involving thirty depositions,

5  thousands of pages of discovery and data, dozens of meet-and-confer sessions, and three mediations

6  followed by a mediator's proposal and then several weeks of negotiations on settlement terms, the

7  Parties settled the Actions.  (Kabateck Decl., ¶¶ 7, 17.)

8  **A. The Strength of Plaintiffs' Cases and Complexities of Further Litigation**

9  Plaintiffs believe that the Class claims in these Actions are legally meritorious and present a

10  reasonable probability of a favorable determination on behalf of the Class, as is borne out by the

11  significant amount offered in the settlement.  At the same time, there is undeniably significant

12  litigation risk avoided by the proposed Settlement, whether at class certification proceedings, at trial,

13  or in appellate proceedings.

14  Given these very real litigation risks, Co-Class Counsel strongly believe that the Settlement

15  of $9,250,000 is an excellent one.  (*Id.*, at ¶ 11.)  The settlement amount is, of course, a compromise

16  figure.  (*Ibid.*)  Plaintiffs took into account the risks that the class would not be certified or later

17  decertified, risks related to proof of damages, risks related to the extraterritorial application of

18  California employment law, and the strengths and weaknesses of Defendants' other defenses.  (*Ibid.*)

19  Plaintiffs also took into account the possibility that if a settlement were reached after additional

20  years of litigation, the great expense and attorneys' fees of litigation would reduce the amount of

21  funds available to Plaintiffs for settlement.  (*Ibid.*)  Furthermore, Plaintiffs also took into

22  consideration the time delay and financial repercussions of trial and the possibility of an appeal by

23  Defendants as well as the effect that would have on Class Members.  (*Ibid.*)  Accordingly, the

24  Settlement Amount is fair and adequately compensates the Class for the wage and hour claims.

25  (*Ibid.*)

26  Courts presume the absence of fraud or collusion in the negotiation of a settlement unless

27  evidence to the contrary is offered.  In short, there is a presumption that the negotiations were

28  conducted in good faith.  (*Newberg*, § 11.51; *In re Chicken Antitrust Litigation* (N.D. Ga. 1980) 560

F.Supp. 957, 962; *Priddy v. Edelman* (6th Cir. 1989) 883 F.2d 438, 447; *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.* (7th Cir. 1987) 834 F.2d 677, 682.) Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the (*Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087; *Steinberg v. Carey* (S.D.N.Y. 1979) 470 F.Supp. 471; *In re Armored Car Antitrust Litigation* (N.D. Ga. 1979) 472 F.Supp. 1357, aff'd in part, rev'd in part in 645 F.2d 488 (5th Cir. 1981).)

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they appear to be competent, have experience with this type of litigation, and have obtained substantial evidence from the opposing party. (See 4 *Newberg on Class Actions*, § 11.47.) Here, the plaintiff and defense firms involved in the cases have a great deal of experience in wage and hour class action litigation. Counsel for Plaintiffs have been approved as Co-Class Counsel in numerous other wage and hour class actions. (Kabateck Decl., ¶¶ 5, 29; Kopfman Decl., ¶¶ 10–14.)

As already discussed herein, the Parties have engaged in sufficient investigation, discovery, and discussions to assess the relative merits of the claims of Plaintiffs and Defendants' defenses to them. (*Id.*, at ¶¶ 6–8, 17.) The settlement is for a total of $9,250,000 and it does not require that the Class Members submit claim forms and there is no residual to revert to Defendants. (SA, § I.O.**)** Any portion of a Class Member's settlement not paid as a result of an invalid address or any checks issued by the Settlement Administrator to Participating Class Members not cashed within one hundred and eighty (180) days will be void. (SA, § IV.L.) Pursuant to the Settlement Agreement, the proceeds from any uncashed checks from the Net Settlement Amount shall escheat to the State of California, State Controller's Office, Unclaimed Property Division, in the name(s) of the corresponding Participating Class Member(s), which shall remain available for those Participating Class Members to claim thereafter. (SA, § IV.L.; Kabateck Decl., ¶ 21.)

In sum, Co-Class Counsel have thoroughly, investigated, reviewed, and researched the facts and law relating to these Actions. Co-Class Counsel are of the opinion that the settlement set forth in the Settlement Agreement is fair, adequate, and reasonable and is in the best interest of the Class

26

in light of all known facts and circumstances, including the risk of significant delay and Defendants' defenses asserted to the merits and the class action status of these Actions. (Kabateck Decl., ¶¶ 11, 18.)

### B. The Benefits Conferred by the Settlement

The proposed Settlement provides for a relatively easy settlement administration procedure which imposes minimal burdens on the Class. (Kabateck Decl., ¶ 21; *see* SA, **Exhibit A**.) There is no claims-made process, and a simple opt-out procedure by which class members may submit to the Settlement Administrator a request to be excluded from the Settlement within forty-five (45) days from the date Notice Packets are mailed to the Class. (SA, § IV.F; *see* SA, **Exhibit A**.) Awards shall be determined based on number of Qualifying Work Weeks the Class Member worked in California during the Class Period or else a truck he owned was driven in California during the Class Period. Each Class Member's Qualifying Work Weeks will be set forth on the Class Member's Notice of Estimated Individual Settlement Payment along with the amount of the estimated Individual Settlement Payment. (*Id.*, at § IV.D.; *see* SA, **Exhibit B**.) Individual Settlement Payments will be paid from the Non-Reversionary Net Settlement Amount to Participating Class Members as discussed herein and set forth in the Settlement Agreement. (SA, § II.A.)

The Individual Settlement Payments and release by Defendants of Participating Class Members are made in exchange for Participating Class Members' release of all Released Parties from all Released Claims, which is set forth in the Settlement Agreement at sections I.BB. and I.CC. (*Id.*, at §§ I.BB., I.CC.)

In addition to the Released Claims set forth in the Settlement Agreement that are mentioned above, only Named Plaintiffs enter into a broader general release, including a waiver of California Civil Code Section 1542 as to any claims he does not know or suspect to exist in their favor against the Released Parties. (*Id.*, at § III.E.)

### C. The Experience and Views of Counsel

Although recommendations of counsel proposing the Settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, have experience with this type of litigation, and discovery has commenced.

(*Newberg*, § 11.47.)  Indeed, courts should not substitute their judgment for that of the proponents of a settlement, especially when negotiated by experienced counsel familiar with the litigation.  (See, e.g., *Hammon v. Barry* (D.D.C. 1990) 752 F.Supp. 1087 (citing *Newberg* § 11.44).)

Co-Class Counsel are experienced in class action litigation, with decades of combined complex litigation experience, including particular experience in wage-and-hour class action litigation.  (Kabateck Decl., ¶¶ 5, 29; Kopfman Decl., ¶¶ 10, 12–14.)  Defense counsel are no less qualified or experienced.  (*Ibid.*)  This was a hard-bargained, non-collusive settlement hammered out during mediations and extensive post-mediation negotiations.  (Kabateck Decl., ¶ 17; Kopfman Decl., ¶ 7.)  All counsel agree that the Settlement represents a fair and reasonable resolution to this matter in light of the various risks and costs to the respective parties of continued litigation.  (*Id.*, at ¶¶ 11, 21.)

### D.  The Absence of "Obvious Defects" or Any Indicia of Unfairness

There was no collusion among the settling Parties, or any other "obvious defect" or indicia of unfairness with regard to the proposed Settlement.  (Kabateck Decl., ¶ 15.)  Litigation was at all times fully adversarial, with counsel for each side vigorously advocating for their clients' positions.  (*Ibid.*)

The proposed Settlement does not place Named Plaintiffs' interests ahead of the interests of the Class as a whole.   (*Id.*, at ¶ 14.)  Apart from a reasonable Enhancement Payment for their efforts on behalf of the Class, typical in class action litigation (and subject to Court approval after notice to the Class), Named Plaintiffs' personal recovery in these Actions and Settlement will be determined in the same as any other Participating Settlement Class Member.  (*Id.*)  Named Plaintiffs have not in any way tried to leverage a class action for personal gain or agenda.  (*Id.*)

The proposed Settlement also does not place the attorneys' interests ahead of Class Members' interests.  Settlement provisions relating to attorneys' fees and litigation expenses in these Actions were not negotiated until after an agreement was reached in principal with respect to the direct class settlement benefits and the Gross Settlement Amount.  (*Id.*, at ¶¶ 14,24.)  Further, the Settlement provides only for a maximum permissible amount of the request for any award of attorneys' fees and litigation expenses.  Any award of fees and expenses remains to be determined

28

by the Court at the time of the fairness hearing and must necessarily be found to be fair and reasonable to the Settlement Class based on applicable law. Again, each Settlement Class Member has the right to object and be heard regarding the amount of fees and expenses requested. (SA, § IV.G.)

### E.  The Settlement Falls Within the Range of Possible Approval.

Finally, the Court must consider whether the settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." (*Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2009) 670 F.Supp.2d 1114, 1125 (citing *In re Tableware Antitrust Litig.* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1080 (internal quotations omitted).)

Co-Class Counsel have calculated the maximum damages to the class members, exclusive of penalties and interest, to be approximately $77,248,533, should the cases proceed to trial and should Plaintiffs prevail on every cause of action and claim. (Kabateck Decl., ¶ 22.) Defendants contest liability, the amount of damages, as well as the propriety of certification, and are prepared to vigorously defend against Plaintiffs' claims and oppose certification if these Actions are not settled. (*Ibid.*) However, the law on certain issues in these cases are both unsettled and uncertain. Defendants contend that Class Members were properly classified as independent contractors by arguing that Class Members retained significant discretion in performing driving services under Defendants' DOT authority, including the time, place, and manner in which they performed those services, that several Class Members did business with Defendants' as limited liability companies and not individuals, that some Class Members owned multiple tractors and in fact hired other drivers to drive those tractors, and that Class Members spent significant time performing driving services outside California and that California wage and hour laws therefore either do not apply or significantly limit the damages recoverable by Class Members in these Actions. Plaintiffs strongly oppose Defendants' position on these matters. Given the maximum potential damages, as well as the substantial risks entailed by these cases, the $9,250,000 non-reversionary settlement sum is within the range of possible approval. (*Ibid.*)

The significant risk that this Court may deny class certification is obviated by the Settlement, particularly in light of certification standards under Federal Rule of Civil Procedure, Rule 23, as articulated by the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* (2011) 131 S.Ct. 2541. (*Id.*) Further, even if Plaintiffs were to obtain certification and ultimately prevail on the merits, a legitimate controversy exists as to each cause of action and Plaintiffs recognize that proving the amount of wages due to each individual Class Member would be an expensive and time-consuming proposition. (*Id.*) In addition, continued litigation would inevitably delay payment to the class. The fact that a settlement will eliminate delay and further expenses strongly weighs in favor of approval. (*Id.*; *see also Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948, 966.)

The Settlement is fair, adequate, and reasonable even though the amount in controversy greatly exceeds the settlement amount. While the amount in controversy may well be in excess of $77 million, the simple fact is that there is no guarantee that Class would recover even close to this amount if these Actions proceed to certification and trial and importantly, here, no guarantee that Defendants would be able to pay even close to that amount in light of the revelation about their current financial circumstance. These cases pose significant unsettled legal issues that, if decided in Defendants' favor, would be dispositive. This Settlement represents a compromise based on the facts and circumstances attendant to these Actions. There is undeniably significant litigation risk avoided by the proposed Settlement, whether at class certification proceedings, at trial, or in appellate proceedings.

## VI. CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant this Motion for Preliminary Approval and enter the Proposed Order Granting Preliminary Approval of Class Action Settlement; (2) approve the content and plan for distribution of the Notice Packet; (3) provisionally certify the class described herein for settlement purposes only; (4) appoint Plaintiffs as Class Representatives; appoint Brian S. Kabateck and Cheryl A. Kenner of Kabateck Brown Kellner LLP and Daniel M. Kopfman, and Lawrence M. Artenian of Wagner Jones Kopfman & Artenian LLP as Co-Class Counsel; and (6) schedule a Final Approval Hearing.

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Dated:  April 13, 2018         **KABATECK BROWN KELLNER LLP**

By:    *Cheryl Kenner*
                   Brian S. Kabateck
                   Cheryl A. Kenner

Dated:  April 13, 2018         **WAGNER JONES KOPFMAN & ARTENIAN LLP**

By:    /s/ Daniel M. Kopfman
                   Daniel M. Kopfman
                   Lawrence M. Artenian

Attorneys for Plaintiffs and all others similarly situated

31