1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JABIR SINGH, et al., | No. 1:15-cv-01497-DAD-BAM |
| Plaintiffs, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION; and MORGAN SOUTHERN, INC., | (Doc. No. 111) |
| Defendants. | |

        This action came before the court on May 1, 2018, for hearing of plaintiffs' motion for

preliminary approval of class certification. (Doc. No. 111.) The motion is unopposed. Attorneys

Nicholas Wagner, Brian Kabateck, and Andrew Jones appeared at the hearing, and attorney

Cheryl Kenner appeared telephonically, all on behalf of plaintiffs. (Doc. No. 117.) Attorney

Megan Ross appeared at the hearing and attorney Adam Smedstad appeared telephonically, both

on behalf of defendants. (*Id.*) Oral argument was heard, and the court requested supplemental

briefing to be submitted by May 4, 2018. (*Id.*) After the filing of plaintiffs' supplemental

briefing, the motion was taken under submission. Based on the court's review of the pending

motion, plaintiffs' supplemental submission, and the information presented by counsel at the

hearing, the court will grant the motion for preliminary approval of the class action settlement.

On February 9, 2015, plaintiffs Jasbir Singh, Bany Lopez, Julio Vidrio, James Sliger, Derrick Lewis, Jerry Leininger, Kristopher Spring, Jerry Wood, Cappelli Burless, Robert Haskins, and Douglas Luis (the "*Singh* plaintiffs") filed a class action entitled *Singh et al. v. Roadrunner Intermodal Services, LLC et al.*, Case No. CGC-15-544563 on behalf of all similarly situated current and former truck drivers employed by Roadrunner Intermodal Services, LLC; Central Cal Transportation, LLC; and Morgan Southern, Inc. ("defendants") in the San Francisco County Superior Court (the "*Singh* action"). (*See* Doc. No. 111 at 8.) On April 15, 2015, defendants removed the action to the United States District Court of the Northern District of California. (Doc. No. 1.) On October 2, 2015, the action was transferred to the Sacramento Division of the United States District Court of the Eastern District of California. (Doc. No. 30.) On February 18, 2016, the action was reassigned to the undersigned, sitting in the Fresno Division of this court. (Doc. No. 42.)

On September 18, 2015, plaintiffs Paul Bonner, Christopher Cross, Leo Lewis, Richard Love, Wilfred McGirt, and Nicholas Rich (the "*Rich* plaintiffs") filed a class action entitled *Rich v. Roadrunner Intermodal Services, LLC et al*, Case No. 2:15-cv-07330-DMG-JPR.on behalf of all similarly situated current and former truck drivers employed by defendants in the United States District Court for the Central District of California (the "*Rich* action"). (*See* Doc. 111 at 9.)

On January 8, 2016, plaintiff Latrina Phillips filed the class action entitled *Latrina Phillips v. Roadrunner Intermodal Services, LLC et al*, Case No. 2:16-CV-01072-SVW-MRWx on behalf of all similarly situated current and former truck drivers employed by defendants in the United States District Court for the Central District of California (the "*Phillips* Action"). (*See id.*)

On December 16, 2016, the *Rich* plaintiffs filed their motion for class certification. *See* 2:15-cv-07330-DMG-JPR, Doc. No. 53. On December 22, 2016, before that motion was fully briefed, District Judge Dolly M. Gee transferred the *Rich* action to the Eastern District California under the first-to-file rule. *See* 2:15-cv-07330-DMG-JPR, Doc. No. 60. On February 9, 2017, the undersigned issued an order relating the *Singh*, *Rich*, and *Phillips* actions. (Doc. No. 71.) On

March 28, 2017, the undersigned consolidated the *Singh* and *Rich* actions (Doc. No. 78) and on

June 15, 2017, consolidated the *Phillips* action with the two previously consolidated actions.

(Doc. No. 92.)

In their respective operative complaints, the plaintiffs in *Singh*, *Rich*, and *Phillips*, on

behalf of themselves and all others similarly situated and similarly aggrieved, seek damages,

restitution, penalties, pre- and post-judgment interest, costs, attorneys' fees, and any other relief

deemed appropriate by the court based on their claims for:  (1) misclassification of employees in

violation of Labor Code § 226(a)(1); (2) failure to provide meal periods; (3) failure to provide rest

breaks; (4) failure to pay overtime wages; (5) failure to pay minimum wages; (6) failure to pay all

wages upon separation; (7) failure to furnish timely and accurate wage statements; (8) failure to

pay all wages owed every pay period; (9) failure to reimburse business expenses; (10) unlawful

deductions from wages; (11) penalties under California's Private Attorneys General Act

("PAGA"); and (12) violation of California's Unfair Competition Law under California Business

& Professions Code § 17200, premised on their wage-and-hour claims.  (Doc. No. 112-2 at 4, ¶

4.)

Following three mediation sessions, the parties reached a settlement.  (Doc. No. 111 at

10.)  The first two mediation sessions occurred on July 12, 2016 and September 14, 2016 before

the Honorable Peter D. Lichtman (Ret.) and did not result in a settlement.  (*Id.*)  Following those

mediation sessions, both parties proceeded with depositions of the plaintiffs, witnesses,

defendants' current and former employees, and persons most knowledgeable ("PMK") in

California and Georgia.  (*Id.*)  The third mediation session involved co-class counsel in the *Singh*,

*Rich*, and *Phillips* actions, defendants and their counsel, and mediator Mark S. Ruby and resulted

in a mediator's proposal, which the parties accepted.  (*Id.*)

Under the settlement agreement, defendants have agreed to pay $9,250,000, which

includes (i) the total value of all individual settlement payments; (ii) attorneys' fees

($3,083,333.33) and costs ($90,000) that class counsel will request the court to award; (iii)

settlement administration costs ($12,000); (iv) $7,500 enhancement payments awarded by the

court to each of the eighteen named plaintiffs, totaling $135,000; and (v) civil penalties of

3

$100,000 recoverable under PAGA, of which 75% ($75,000) will be paid to the Labor Workforce and Development Agency ("LWDA") and 25% ($25,000) will be paid to class members. (Doc. No. 111 at 11, 15.)

On April 13, 2018, plaintiffs filed the pending motion for preliminary approval of the class action settlement. (Doc. No. 111.) Plaintiffs seek an order: (i) preliminarily approving the proposed class action settlement; (ii) confirming CPT Group Inc. as the settlement administrator; (iii) approving and directing distribution of the class notice packet to be mailed to class members; (iv) approving the proposed class representatives and co-class counsel; and (v) scheduling a final fairness hearing with respect to the settlement agreement. (Doc. No. 111-2 at 3–4.)

## LEGAL STANDARD

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. Moreover, it has been recognized that when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

When parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

4

Review of a proposed class action settlement ordinarily involves two hearings.  *See* Manual for Complex Litigation (4th) § 21.632.  First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification.  If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined).  Second, the court holds a final fairness hearing to determine whether to approve the settlement.  *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for preliminary approval of a class settlement and preliminary class certification.  Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); Newberg on Class Actions § 13:13 (5th ed. 2011); *see also Dearauju v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].").

## ANALYSIS

### A.      Preliminary Evaluation of Fairness of Proposed Class Action Settlement

Plaintiff seeks approval of their proposed settlement agreement.  (*See* Doc. No. 112-3.) As noted, under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate.  *Bluetooth*, 654 F.3d at 946.  "[P]reliminary approval of a settlement has both a procedural and substantive component."  *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157

F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).  In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if:  (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class.  *Id.*; *see also Ross v. Bar None Enterprises, Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).  However, a district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

1.      Negotiations

The court must first consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation."  *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).  In addition, participation in mediation "tends to support the conclusion that the settlement process was not collusive."  *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015) (citation omitted).

The settlement which is the subject of the pending motion appears to be the product of serious, substantial, and arms-length negotiations.  As discussed above, the parties reached the settlement after three mediations sessions, which were held several months apart and which were separated by nearly thirty depositions and extensive discovery by the parties.  (Doc. No. 111 at 10.)  The first mediation occurred on September 14, 2016, and plaintiffs accepted the mediator's proposal following the third mediation held on February 14, 2018.  (*Id.*)  Some dispositive

/////

/////

/////

6

motions were filed in the consolidated actions prior to their transfer to this court.[1]  Based upon this history, the court is convinced that the parties' negotiations were extensive, involved, and non-collusive, lending credence to the fairness of the settlement and supporting plaintiffs' motion for preliminary approval.

### 2.  Obvious Deficiencies

A proposed settlement does not meet the test for preliminary fairness if there are any obvious deficiencies in the proposed agreement.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Here, the settlement states that defendants shall pay $9,250,000 to settle the *Singh*, *Rich*, and *Phillips* actions.  (Doc. No. 111 at 14.)  The total settlement amount is based on the assumption that the class comprises 796 drivers with 41,846 qualifying work weeks ("QWW").  (*Id.*)  This total includes amounts to be paid to class members, awards for attorneys' fees and costs, enhancement payments for named plaintiffs, and the settlement administration expenses.  (*Id.*)  No portion of the settlement amount will revert back to defendants.  (*Id.*)  At the hearing on the pending motion, counsel for both parties clarified that the settlement is not conditioned on any particular award of attorneys' fees, expenses, or incentive awards.   Further, the settlement provides a means for class members to exclude themselves from the settlement.  (*Id.*)  The release of liability appears reasonably tailored to the claims presented in the action for class members, with named plaintiffs agreeing to a general release of all claims.  (*Id.* at 34.)  The settlement agreement provides for a settlement administrator to coordinate notice to the class, any requests for exclusion, and payments to class members upon final approval.  (*Id.*)  Based upon this showing, the court is satisfied there are no obvious deficiencies with the proposed settlement.

### 3.  Preferential Treatment

In making a preliminary fairness determination, the court must assure itself that the proposed settlement does not provide preferential treatment to certain members of the class or the

---

[1]  In the *Phillips* action, defendants filed a motion for summary judgment, which was denied.  *See* 2:16-cv-01072-SVW-MRWx, Doc. Nos. 14, 24.  In the *Rich* action, plaintiffs filed a motion for class certification, which was never fully briefed nor heard because the action was transferred from the Central District of California to the Eastern District under the first-to-file rule.  (*See* Doc. No. 111 at 9.)

named plaintiffs. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. As noted above, the settlement terms provide for the settlement amount to be divided among class members in proportion to the number of QWW that they were employed. (Doc. No. 111 at 14.) The court therefore turns to the attorneys' fees provisions and the anticipated incentive awards.

### i. Attorneys' Fees

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). Thus, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). Similarly, while "[i]ncentive awards are fairly typical in class action cases," *Rodriquez*, 563 F.3d at 958–59, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. . . . [C]oncerns over potential conflicts may be especially pressing where . . . the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citations omitted).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

/////

8

Here, plaintiffs' co-counsel state that they will seek attorneys' fees in the total amount not to exceed one-third of the ultimate gross settlement amount. (Doc. No. 111 at 15.) Accordingly, assuming the gross settlement amount remains at $9,250,000, plaintiffs' co-counsel will seek a total award of attorneys' fees in an amount not to exceed $3,083,333. (*Id.*) This fee amount is above the Ninth Circuit benchmark amount. *See Bluetooth*, 654 F.3d at 947 (setting a 25% benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers*, 904 F.2d at 1311 (same). However, the percentage is not unreasonable as an upper bound. *See Vizcaino*, 290 F.3d at 1047 (observing that percentage awards of between twenty and thirty percent are common); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). In connection with the final fairness hearing, however, the court will consider any objections as well as the evidence presented by counsel in order to determine whether the award of an above-benchmark percentage in attorneys' fees is reasonable in this case. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

### ii. Incentive Payments

Plaintiffs will also seek an incentive award of $7,500 for each of the eighteen named plaintiffs in these consolidated actions. At the hearing on the pending motion, plaintiffs' counsel described how each named plaintiff expended a great deal of time and effort in assisting co-class counsels' prosecution of these three cases, by responding to discovery requests, preparing, and appearing for depositions—participation in which required missing work and accepting the risks of protracted class action litigation. Additionally, plaintiffs' counsel stated that the numerous named plaintiffs originate from each of the three separate actions that were consolidated and represent all of the trucking companies that were acquired by defendants. Finally, under the settlement, each named plaintiff enters into a broad release of claims, including a § 1542 waiver as to any claims they do not know or suspect to exist in their favor against any of the released parties. (Doc. No. 111 at 34.)

9

The incentive award provided in the settlement agreement is high and similar in amount to the average recovery amount of individual class members, estimated by plaintiffs to be around $7,355.11 per class member (assuming that the number of class members does not change). (*See* Doc. No. 111 at 16.) However, courts in this circuit have approved enhancement awards in this amount, and such an award here would not be "outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods,* No. 1:15cv00093 DAD EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (and cases cited therein); *see also Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving an enhancement award of $7,500 to each class representative). While preliminary approval will be granted, the court will review the evidence presented at the final approval hearing to determine whether incentive awards to the named plaintiffs in the amounts sought are ultimately warranted in this case.

4. Range of Possible Approval

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, the proposed settlement is for a total sum of $9,250,000. (Doc. No. 111 at 36.) Plaintiffs have calculated that if the cases were to proceed to trial and plaintiffs were to prevail on every claim, the maximum damages to the class members, exclusive of penalties and interest would be approximately $77,248,533. (*Id.*) At the hearing on the pending motion, the court requested further briefing addressing how the parties estimated the maximum total damages to be seventy-seven million dollars. Thereafter, plaintiffs submitted supplemental briefing that

included calculations for the maximum damages to the class members, which are summarized in the chart below.  (*See* Doc. No. 118 at 3–9.)

| CAUSE OF ACTION | ESTIMATED MAXIMUM DAMAGES |
|---|---|
| Meal and Rest Break Violations | $6,276,900 |
| Penalties for Failure to Pay all Wages at Separation | $3,590,000 |
| Failure to Furnish Timely and Accurate Wage Statements | $2,023,200 |
| Failure to Pay all Wages Owed Every Pay Period | $11,130,265 |
| Failure to Pay Minimum Wages | $9,147,663 |
| Improper Deductions (Unreimbursed Business Expenses) | $45,080,505 |
| **Total** | **$77,248,533** |

After reviewing plaintiffs' supplemental briefing, the court is satisfied with counsels' explanation for the estimate of maximum damages in the amount of $77,248,533, excluding the PAGA claim.  Though the total settlement amount of $9,250,000 includes a designated amount of $100,000 for civil penalties under PAGA, plaintiffs have not provided an estimate for the value of the PAGA claim in analyzing the maximum potential value of all claims in this consolidated action.  (*See* Doc. No. 111 at 11.)  Though the court will grant preliminary approval under the circumstances presented in this case, the court directs plaintiffs' counsel to address the estimated value of the PAGA claim in their motion for final class certification.  *See Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 942 (N.D. Cal. 2016) (PAGA penalties must be included in an estimate of a maximum realistic award); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016) (denying preliminary approval of proposed settlement in light of unfair and inadequate settlement of claims under PAGA).

The proposed settlement amount is for approximately twelve percent of the estimated maximum damages, without including the estimated value of the PAGA claims.  There are two primary reasons for why the court preliminarily concludes that this settlement amount is fair and reasonable.  First, plaintiffs note and acknowledge that even if they prevailed on all claims at trial and were awarded the maximum amount of damages set forth, there is no guarantee that

11

defendants would be able to pay the judgment due to their current financial circumstances.[2] (Doc. No. 118 at 9.) Additionally, plaintiffs contend that there are several issues of unsettled law that led them to agree to this settlement. (Doc. No. 118 at 9–10.) First, defendants may be able to assert various affirmative defenses to plaintiffs' claims, which may detract from plaintiffs' recovery. (*Id.*) Second, plaintiffs state that it is unsettled whether the California Labor Code may be applied to work performed outside of the state, which could subject drivers to less favorable out-of-state laws. (*Id.*) Third, plaintiffs note that defendants would argue that their piece-rate formula was nearly identical to a pay formula found to be lawful in a recent case involving truck driver compensation system. *See Aguirre v. Genesis Logistics*, No. SACV 12-00687-JVS (ANx), 2013 WL 10936036 (C.D. Cal. July 3, 2013) (finding that defendant's compensation plan separately and directly compensated employees for pre- and post-shift activities that do not qualify for piece-rate compensation and was therefore in compliance with California law).

Recognizing these risks faced by the plaintiffs here, the court finds that the amount offered in settlement of these actions weighs in favor of preliminary approval.

**B.      Preliminary Certification of the Settlement Class**

Plaintiffs seek preliminary certification of the proposed California class under Federal Civil Procedure Rule 23(c)(1). Under that rule, courts must determine by order whether an action

---

[2]  Prior to the hearing for preliminary approval of the class settlement, plaintiffs filed a supplement (Doc. No. 116) requesting that the court modify the terms of the settlement agreement to require defendants to deposit settlement funds with the third-party administrator in the event of an appeal from a class member's objection, rather than await resolution of any such appeal. (*Id.* at 4.) Plaintiff argued that defendants are experiencing financial hardships and any delay in the deposit of the settlement funds creates an unnecessary and significant risk that defendants will default and be unable to pay. (*See* Doc. Nos. 111 at 24, 116 at 3–5.) As indicated at the hearing, the court will not modify the parties' settlement agreement. As the Ninth Circuit has observed:

> Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted.

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982). Accordingly, plaintiffs' request to modify the settlement agreement (Doc. No. 116) is denied.

should be maintained as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1). The court must independently consider whether the proposed class meets the requirements of Rule 23 both at this stage and at the later fairness hearing. *See Pointer v. Bank of Am. Nat'l Ass'n*, No. 2:14-cv-00525-KJM-CKD, 2016 WL 696582, at *3 (E.D. Cal. Feb. 22, 2016) (citing *Amchem Prods., Inc.*, 521 U.S. at 622).

Certification requires satisfaction of the pre-requisites of Rule 23(a) and (b). *Id.* As noted above, courts analyzing a motion to certify a settlement class must pay "undiluted, even heightened attention" to Rule 23 requirements. *See Amchem*, 521 U.S. at 620, n.16. A thorough Rule 23 analysis is especially important where a motion to certify a settlement class is unopposed, because in such circumstances "[t]here is no advocate to critique the proposal on behalf of absent class members." *Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007); *see also Pointer*, 2016 WL 696582, at *4 ("The problem is greater at this preliminary approval stage, where objectors are unlikely to have already appeared.").

On a motion for preliminary approval, plaintiff bears the burden of showing that the proposed class satisfies Rule 23 requirements. Even at the preliminary stage, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23(c)(1), Advisory Committee 2003 Note.

1.     Rule 23(a) Requirements

"Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003); *see also Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 730 (9th Cir. 2007). The court addresses each requirement below.

a.     *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises of as few as thirty nine members, or where joining all class members would serve only to impose

13

financial burdens and clog the court's docket. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810); *In re Itel Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, plaintiffs estimate that there are approximately 796 class members based on an analysis of defendants' records. (Doc. No. 111 at 25–26.) This is sufficient to satisfy the numerosity requirement of Rule 23(a)(1).

### b.    Commonality

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)); *see also Parsons v. Ryan*, 754 F.3d 657, 681-82 (9th Cir. 2014). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("Any competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

Here, plaintiffs argue that the class action claims all stem from a common set of questions of fact and law regarding whether defendants misclassified its truck drivers as independent contractors and failed to provide them meal and rest breaks, as well as pay them proper wages and overtime wages. (Doc. No. 111 at 26.) The common questions include: (i) whether

defendants misclassified employees as "independent contractors," in violation of Labor Code § 226.8(a)(1); (ii) whether class members were paid minimum wage; (iii) whether defendants engaged in a practice of failing to pay class members for the total hours worked; (iv) whether defendants failed to provide class members timely, off-duty thirty minute meal periods and ten minute, uninterrupted rest breaks as contemplated by California law for work periods in excess of four hours or major fraction thereof; (v) whether defendants properly compensated class members for missed, untimely, or on-duty meal periods and/or rest breaks; (vi) whether defendants violated Labor Code § 226(a) by issuing inaccurate wage statements to class members that failed to accurately state total hours worked and/or to include payments for all hours worked, premium wages for noncompliant or missed meal periods and/or rest breaks throughout the class period; (vii) whether defendants violated Labor Code § 2802 by failing to reimburse class members for business expenses incurred in performing their job; (ix) whether defendants violated Labor Code § 221 by unlawfully deducting amounts from class members' wages for business-related expenses incurred in the performance of their job duties; and (x) whether defendants engaged in unfair practices and violated California Business & Professions Code § 17200 by failing to comply with the Labor Code Provisions set forth above and in the operative complaint. (Doc. No. 111 at 27–28.)

Because it appears that the same conduct that plaintiffs allege defendants engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied here. *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 475 (E.D. Cal. 2010) (citing *Acosta v. Equifax Info. Servs.*, *L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007)) (internal quotation omitted).

      c.    *Typicality*

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51

15

F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs allege that each of the class claims arise out of the same type of factual and legal circumstances as those of the class members. (Doc. No. 111 at 29.) At the hearing on the pending motion, the court requested additional briefing on this issue. In their supplemental submission, plaintiffs describe how all class representatives are either current or former truck drivers for defendants during the class period and were subject to similar employment agreements involving issues such as their status as independent contractors and equipment lease agreements. (Doc. No. 118 at 14.) All plaintiffs were classified as independent contractors by defendants and had expenses, such as fuel, location tracking equipment, and taxes associated with their trucks, deducted from their earnings by defendants. (*Id.* at 15.) Further, defendants applied the same meal and rest break policies to all drivers, resulting in the claimed deprivation of mandatory meal periods and rest breaks for class members. (*Id.* at 4.) In sum, there are numerous policies that defendants adopted and applied to all plaintiffs and class members that resulted in the same injuries. With this additional information, the court is satisfied that plaintiffs' claims are reasonably co-extensive with those of the class and that typicality is satisfied here.

>              d.      *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

/////

Plaintiffs contend that class members all possess the same type of interests and have suffered the same type of injuries.  (Doc. No. 111 at 29.)  There is no indication of antagonism between the class representatives' interests and those of the class members.  *See Amchem*, 521 U.S. at 626.

Plaintiffs also seek appointment of their co-counsel, Brian S. Kabateck and Cheryl A. Kenner of Kabateck Brown Kellner LLP and Daniel M. Kopfman and Lawrence M. Artenian of Wanger Jones Kopfman & Artenian LLP, as co-class counsel.  (Doc. No. 111 at 29.)  The declarations submitted by counsel describing their extensive experience in class action wage and hour litigation, including federal and state misclassification and wage and hour class actions, are clearly adequate to establish their suitability to represent the class.  (*See* Doc. Nos. 111-1 at ¶¶ 2, 29; 111-2 at ¶¶ 10–14.)  The court thus finds that plaintiffs' have satisfied the adequacy of representation requirements with respect to the class.

2.    Rule 23(b)(3) Requirements

The parties seek certification under Rule 23(b)(3).  Rule 23(b)(3) requires:  (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *See Amchem*, 521 U.S. at 615.  The test of Rule 23(b)(3) is "far more demanding" than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).  The court will examine each of the requirements in turn below.

a.    Predominance

First, the common questions must "predominate" over any individual questions.  While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis.  *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022 (9th Cir. 1998).  While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate."  *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single

17

adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

As discussed at length above, plaintiffs' complaint challenges defendants' employment policies related to their practices in classifying its truck drivers as independent contractors, providing them meal and rest breaks, payment of proper wages and overtime wages, and deduction of business expenses. (*See* Doc. 111 at 26–28; 30.) Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *5–6 (E.D. Cal. July 6, 2015); *see also Clesceri v. Beach City Investigations and Protective Servs., Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011). Here, all claims arise from defendants' common, class-wide policies and procedures such that liability can be determined on a class-wide basis without dependence on individual assessments of liability. The court therefore concludes that the predominance requirement has been satisfied in this case.

### b.      Superiority

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

A class action is superior in this instance to any other available method for adjudicating this controversy. The class consists of approximately 796 current and former drivers, which would burden the court system significantly if all class members were to litigate their claims individually. (Doc. No. 111 at 31.) Further, the approximate average hourly pay rate for class members is low, making it unlikely that class members would choose to pursue individual

actions. (*Id.*) The court therefore concludes that this dispute appears well-suited for class-wide resolution.

**C.    Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

i.    Class Notice

Here, plaintiff's proposed notice describes the terms of the settlement, informs the class of the proposed attorneys' fee amount, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may enter an appearance through counsel. (Doc. No. 112-3.) The proposed notice also advises absent class members as to how they may object to the proposed settlement or opt out of it, and provides for mail delivery. (*Id.*) Plaintiffs indicate that the notice to the class will be disseminated through direct first-class mail to the class members at their last-known addresses provided in defendants' records. (Doc. No. 111 at 17–18.) Notices returned as undeliverable will be re-mailed to the best available address after performing skip tracing services offered by publicly available databases. (*Id.*) Plaintiffs indicate that the settlement administrator will use similar updating procedures at the time of mailing settlement payments to participating class members. (*Id.*) Further, the settlement

administrator will maintain web, electronic mail, and toll-free telephone support services in both English and Spanish to assist class members in fully understanding the lawsuit and settlement. (*Id.* at 17.)

ii.  Cost of Claims Administration

Plaintiffs state that the cost of claims administration in connection with this proposed settlement will not exceed $12,000.  (Doc. No. 111 at 16.)  The budgeted claims administration costs are within the range of other proposed settlements submitted to this court and do not cause the court to question the preliminary fairness of this settlement.  *See Dakota Med., Inc. v. RehabCare Grp., Inc.,* No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for $25 million settlement); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 (E.D. Cal. Jan. 11, 2017) (administration costs of $45,000 for $4.5 million settlement); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *1 (E.D. Cal. Dec. 22, 2016) (administration costs up to $20,000 for $290,000 settlement).

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

Additionally, plaintiffs have submitted the following implementation schedule:

| Event | Date |
|---|---|
| Deadline for defendant to supply class list to CPT Group, Inc. | Five (5) days from grant of preliminary approval |
| Deadline for CPT Group, Inc. to mail notice packets to class members | Ten (10) days from receipt of class list |
| Deadline for Class Members to postmark Requests for Exclusion, Objections, and Disputes of Qualifying Work Weeks | Forty-five (45) days from Notice Date—date Notice Packets are mailed (i.e. Response Deadline) |
| Extended Deadline for Class Members with re-mailed Notice Packets to postmark Requests for Exclusion, Objections, and Disputes of Qualifying Work Weeks | Fifteen (15) days from initial 45-day Response Deadline |
| Deadline for CPT Group, Inc. to provide Declaration to Class Counsel regarding compliance with settlement administration procedures and costs | Ten (10) days prior to deadline for Co-Class Counsel to file Motion for Final Approval |
| Deadline for Co-Class Counsel to file (1) Responses to Class Members' Objections, if any, and (2) Motion for Final Approval; Awards of Attorneys' Fees, Request for Reimbursement of Costs; Class Representatives' Enhancements; and Settlement Administrator's Costs | September 18, 2018 |
| Fairness Hearing and Final Approval | October 16, 2018 at 9:30 A.M. |

The court finds that the notice and the manner of notice proposed by plaintiff meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate.

**CONCLUSION**

For the reasons stated above:

1. Plaintiffs' request to modify the settlement agreement (Doc. No. 116) is denied;

2. Preliminary class certification is approved for the settlement class defined as: all current and former California residents who worked for the defendants in the position of owner-

21

operator and/or independent contractor truck driver at any time from February 9, 2011 through April 15, 2018;

3. The court designates named plaintiffs Jasbir Singh, Bany Lopez, Julio Vidrio, James Sliger, Derrick Lewis, Jerry Leininger, Kristopher Spring, Jerry Wood, Cappelli Burless, Robert Haskins, Douglas Luis, Paul Bonner, Christopher Cross, Leo Lewis, Richard Love, Wilfred Mcgirt, Nicholas Rich, and Latrina Phillips as class representatives, and the law firms of Kabateck Brown Kellner LLP and Wagner Jones Kopfman & Artenian LLP as co-class counsel;

4. CPT Group, Inc. is approved as the settlement administrator;

5. The proposed form of notice and the claim form conform with Federal Rule of Civil Procedure 23 and are approved;

6. The proposed settlement is approved on a preliminary basis as fair and adequate;

7. The hearing for final approval of the proposed settlement is set for October 16, 2018 at 9:30 a.m. in the courtroom of the undersigned; and

8. The proposed settlement implementation schedule is adopted and plaintiff's counsel is directed to submit a motion for final approval of the settlement agreement, including an estimate of the PAGA claims, and a response to any objections in accordance with the schedule set forth in this order.

IT IS SO ORDERED.

Dated: __**May 25, 2018**__

_____

UNITED STATES DISTRICT JUDGE