UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JABIR SINGH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION; and MORGAN SOUTHERN, INC., <br><br> Defendants. | No. 1:15-cv-01497-DAD-BAM <br><br> ORDER GRANTING MOTION REQUESTING MODIFICATION OF ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT <br><br> (Doc. No. 123) |

This action came before the court on September 5, 2018, for hearing of plaintiffs' unopposed motion requesting modification of the order granting preliminary approval of the class action settlement. Attorneys Brain Kabateck and Daniel Kopfman appeared telephonically for plaintiffs, and attorney Megan Ross appeared telephonically for defendants. (Doc. No. 127.) Having reviewed the parties' briefing and heard arguments, and for the reasons that follow, plaintiffs' motion requesting modification of the order granting preliminary approval of the class action settlement will be granted.

**BACKGROUND**

Both the relevant factual background leading up to this court's order granting preliminary approval and the legal standards for preliminary approval were adequately addressed in the court's prior order and will not be repeated here. (*See* Doc. No. 119 at 2–5.)

1

On May 29, 2018, the court issued an order granting preliminary approval of the class action settlement and preliminarily approving class certification. (Doc. No. 119.) In granting plaintiffs' motion for preliminary approval, the court noted that the settlement amount was based on the belief that the class comprised 796 drivers with 41,846 qualifying work weeks. (*Id.* at 7.) Plaintiffs have now reported that on June 13, 2018, the settlement administrator notified plaintiffs' counsel that defendants produced a class list with 897 class members and involving 49,376.02 work weeks. (*See* Doc. No. 123 at 3.) This change reflects a 12.7% increase in class members and 18% increase in work weeks.[1] (*Id.*)

On June 27, 2018, the parties met with Magistrate Judge Barbara A. McAuliffe in an informal telephonic conference to discuss the unexpected increase in class size. (Doc. No. 122.) Afterwards, the parties attempted to negotiate an increase in the settlement with the assistance of Mark Rudy, the mediator who facilitated the original settlement. (Doc. No. 123 at 3–4.) On August 6, 2018, plaintiffs filed an unopposed motion requesting modification of the order granting preliminary approval of the class action settlement. (*See id.*) Plaintiffs' counsel Brian Kabateck submitted a supplemental declaration in support of the motion on August 14, 2018, which included a fully executed addendum to a stipulation of the class action settlement and release of claims. (Doc. No. 125.)

## DISCUSSION[2]

Plaintiffs request that the order granting plaintiffs' motion for preliminary approval of the class action settlement be modified to provide that the settlement now includes 897 class members and 49,376 qualifying work weeks. (Doc. No. 123-2 at 2–3.) Additionally, plaintiffs request a new implementation schedule leading up to the hearing date for final approval. (*Id.*) No other material changes to the order granting preliminary approval are requested. (*Id.*)

---

[1] At the hearing, counsel for plaintiffs and defendants represented to the court that the discrepancy regarding class size and work weeks was the result of defendant having reviewed the wrong reports in producing the original numbers.

[2] Because the requested modifications change only the class size and work weeks and not how the class is defined, the court will not reexamine its prior order to the extent that it addressed preliminary certification of the proposed class under Federal Rule Civil Procedure 23(c)(1). (*See* Doc. No. 119 at 12.)

Despite the increase in class size and the resulting anticipated decrease in average recovery for class members, plaintiffs state that they "have determined that it is in the best interest of the class to go forward with the settlement based on the originally agreed settlement amount." (Doc. No. 123 at 3–4.) Plaintiffs' decision in this regard is primarily motivated by their concerns about defendants' financial condition and its ability to pay the settlement, a concern that plaintiffs have consistently voiced throughout this litigation. (*See id.* at 4.) Previously in requesting that the court modify the terms of the settlement agreement,[3] plaintiffs described the state of defendants' financial condition as follows:

> . . . Defendants revealed in January 2017 that they overstated their net income by $66.5 million from 2011 to 2016 and made other accounting errors and discrepancies resulting in an ongoing financial and operational reorganization and the firing of the parent company's chief financial officer. This month, Roadrunner appointed Michal L. Gettle, Roadrunner's current president and chief operating officer, to its board of directors after three other board members abruptly resigned. Further, Roadrunner received a notice of non-compliance from the New York Stock Exchange's after failing to meet the NYSE's continued listing requirements which mandates that Roadrunner file a Form 10-K with the Securities and Exchange Commission. Roadrunner did not do so. Further, on April 23, 2018, Roadrunner's stock price plunged 6.88%, closing at $2.03 per share—well below Roadrunner's 40-day and 200-day simple moving average, which is continuing the downward trend Plaintiffs mentioned in their preliminary approval motion.

(Doc. No. 116 at 3–4) (internal citations omitted). Now, in requesting a modification of the order granting preliminary approval of the settlement, plaintiffs continue to express serious concerns about the state of defendants' financial condition. (Doc. No. 123.) Plaintiffs represent that, at the time of filing this motion, the total market value of all of Roadrunner's publicly traded stock

---

[3] On April 30, 2018, prior to the hearing for preliminary approval, plaintiffs filed a supplement (Doc. No. 116), requesting that the court modify the terms of the settlement agreement to require defendants to deposit settlement funds with the third-party administrator in the event of an appeal from a class member's objection, rather than awaiting the resolution of any such appeal. (*Id.* at 4.) Plaintiff argued that defendants are experiencing financial hardships and any delay in the deposit of the settlement funds would create an unnecessary and significant risk that defendants would default and be unable to fulfill their obligation under the settlement. (*See* Doc. Nos. 111 at 24, 116 at 3–5.) In the order granting preliminary approval, the court stated that it would not modify the parties' settlement agreement. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982) ("Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties.").

hovered at approximately $80 million. (*Id.* at 5.) At the time this order was issued, Roadrunner's stock was trading at under a dollar per share. Therefore, plaintiffs' counsel expressed concern that a settlement amount of $9.25 million may be such a substantial outlay that defendants would be unable to pay. (*Id.*) Due to concerns regarding defendants' financial condition, plaintiffs' counsel and the class representatives "concluded that it is in the best interests of the class to continue to endorse the proposed settlement." (*Id.* at 5–6.)

In determining whether a modification of its order is appropriate, the court will consider the same factors that it assessed prior to granting preliminary approval of the class action settlement. (*See* Doc. No. 119 at 4–5.) Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). This determination is based on numerous factors, including but not limited to: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "[P]reliminary approval of a settlement has both a procedural and substantive component." *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enterprises, Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).

The court concludes that the settlement agreement with plaintiffs' requested modifications still appears to be fair, reasonable, and adequate. The modifications do not affect whether the settlement is procedurally fair. Indeed, the parties attempted to renegotiate the settlement with

4

the assistance of a respected mediator, which "tends to support the conclusion that the settlement process was not collusive." *Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015) (citation omitted).

In determining the substantive fairness of the settlement, the court must consider the risk of further litigation and balance the implications of this proposed modification (i.e., a decreased average recovery for each class member) with plaintiffs' quite credible concern that further litigation could result in no recovery at all for class members. Having voiced a concern about defendants' declining financial condition and its possible default at every stage of the settlement process, the court finds plaintiffs' counsel's concerns to be both legitimate and persuasive. (*See* Doc. No. 111 at 20–21; Doc. No. 116; Doc. No. 123 at 5–6.) Additionally, as discussed in the prior order granting preliminary approval, there are several issues of unsettled law involved in this action that could detract from plaintiffs' recovery. (*See* Doc. No. 119 at 12.) Consideration of these factors weigh in favor of the granting of preliminary approval despite the modifications.

"Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946. Here, the class has not passed the stage of final certification, despite reaching a settlement, meaning that the court must carefully note subtle signs of collusion. These signs may include:

> (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded,";
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,";
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund . . ..

*Id.* (internal citations omitted).

The requested modification does not reveal any subtle signs of collusion. The settlement agreement still does not include a "clear sailing" arrangement providing for a separate payment of attorneys' fees, and plaintiffs' counsel maintains that they will seek attorneys' fees in the total amount not to exceed one-third of the gross settlement amount. (Doc. No. 111 at 15.) As discussed in the order granting preliminary approval, this requested fee amount is above the Ninth Circuit benchmark amount of 25% but may not be unreasonable as an upper bound. (*See* Doc. No. 119 at 9.) Finally, at the hearing on the motion for modification, counsel for all parties indicated that should there be class members who wish to be excluded from the settlement, the remaining class fund would not revert back to defendants. There are no other material changes to the settlement agreement, including to the release of liability, notice to the class, requests for exclusion, and payment upon final approval. For these reasons, the court is satisfied that there are no obvious deficiencies to the settlement.

Recognizing the risk of being deprived of any recovery that plaintiffs realistically face here, the court finds that the amount and terms of the modified settlement of these actions still weigh in favor of preliminary approval. Therefore, the court orders the following modified implementation schedule, as submitted by the parties:

| Event | Date |
|---|---|
| Deadline for defendant to supply class list to CPT Group, Inc. | Five (5) days from grant of preliminary approval |
| Deadline for CPT Group, Inc. to mail notice packets to class members | Ten (10) days from receipt of class list |
| Deadline for Class Members to postmark Requests for Exclusion, Objections, and Disputes of Qualifying Work Weeks | Forty-five (45) days from Notice Date—date Notice Packets are mailed (i.e. Response Deadline) |
| Extended Deadline for Class Members with remailed Notice Packets to postmark Requests for Exclusion, Objections, and Disputes of Qualifying Work Weeks | Fifteen (15) days from initial 45-day Response Deadline |
| Deadline for CPT Group, Inc. to provide Declaration to Class Counsel regarding compliance with settlement administration procedures and costs | Ten (10) days prior to deadline for Co-Class Counsel to file Motion for Final Approval |

6

| Deadline for Co-Class Counsel to file (1) Responses to Class Members' Objections, if any, and (2) Motion for Final Approval; Awards of Attorneys' Fees, Request for Reimbursement of Costs; Class Representatives' Enhancements; and Settlement Administrator's Costs | December 11, 2018 |
|---|---|
| Fairness Hearing and Final Approval | January 8, 2019 |

The court notes that the notice and the manner of notice proposed by plaintiffs still meet the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is still appropriate.

## CONCLUSION

For the reasons stated above:

1. Plaintiffs' request to modify the order granting preliminary approval of the class action settlement agreement (Doc. No. 123) is granted;

2. The proposed modified settlement is approved on a preliminary basis as fair and adequate;

3. The hearing for final approval of the proposed settlement is set for January 8, 2019 at 9:30 a.m.; and

4. The proposed settlement implementation schedule is adopted and plaintiff's counsel is directed to submit a motion for final approval of the settlement agreement, including an estimate of the PAGA claims,[4] and a response to any objections in accordance with the schedule set forth in the order.

IT IS SO ORDERED.

Dated: **September 12, 2018**

_____
UNITED STATES DISTRICT JUDGE

---

[4] As discussed in the court's prior order granting preliminary approval, plaintiffs have not provided an estimate for the value of the PAGA claim in analyzing the maximum potential value of all claims in this consolidated action. (*See* Doc. No. 119 at 11.) Therefore, the court directs plaintiffs' counsel to address the estimated value of the PAGA claim in their motion for final class certification and approval of the settlement.

7