UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JABIR SINGH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROADRUNNER INTERMODAL SERVICES, LLC; CENTRAL CAL TRANSPORTATION, LLC; and MORGAN SOUTHERN, INC.,<br><br>Defendants. | No. 1:15-cv-01497-DAD-BAM<br><br>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES<br><br>(Doc. Nos. 131, 132) |

This matter came before the court on January 8, 2019, for hearing on plaintiffs' motion for final approval of a class action settlement and motion for attorneys' fees. (Doc. Nos. 131, 132.) Attorneys Daniel Kopfman, Shant Karnikian, and Chris Noyes appeared in person for plaintiffs and the class, and attorney Christopher McNatt appeared telephonically for defendants. For the reasons that follow, the court will grant final approval of the class action settlement and will award attorneys' fees and costs as requested.

**BACKGROUND**

The relevant factual background leading up to this court's order granting preliminary approval were adequately addressed in the court's prior orders and will not be repeated here. (*See* Doc. No. 119 at 2–5.)

1

On May 29, 2018, the court issued an order granting preliminary approval of the class action settlement and preliminarily approving class certification. (*Id*.) In granting plaintiffs' motion for preliminary approval, the court noted that the settlement amount was based on the belief that the class comprised 796 drivers with 41,846 qualifying work weeks. (*Id.* at 7.) Plaintiffs later reported that on June 13, 2018, the settlement administrator notified plaintiffs' counsel that defendants produced a class list with 897 class members and involving 49,376.02 work weeks. (*See* Doc. No. 123 at 3.) This change reflected a 12.7% increase in class members and an 18% increase in work weeks. (*Id.*)

On June 27, 2018, the parties met with the assigned magistrate judge in an informal telephonic conference to discuss the unexpected increase in class size. (Doc. No. 122.) Thereafter, the parties explored possible re-negotiation of the settlement in light of the changed class size with the assistance of Mark Rudy, the mediator who facilitated the original settlement. (*See* Doc. No. 123 at 3–4.) On August 6, 2018, plaintiffs filed an unopposed motion requesting modification of the order granting preliminary approval of the class action settlement. (*See id*.) Plaintiffs' counsel Brian Kabateck submitted a supplemental declaration in support of the motion on August 14, 2018, which included a fully executed addendum to a stipulation of the class action settlement and release of claims. (Doc. No. 125.)

On September 5, 2018, the parties appeared before the undersigned on the motion requesting modification of the order granting preliminary approval of the class action settlement. (Doc. No. 127.) On September 13, 2018, the court granted plaintiffs' motion. (Doc. No. 128.) On December 11, 2018, plaintiffs filed an unopposed motion for final approval of the class action settlement and a motion for attorneys' fees. (Doc. Nos. 131, 132.)

## FINAL CERTIFICATION OF CLASS ACTION

The court conducted an examination of the class action factors in considering preliminary approval of the settlement and found certification warranted. (*See* Doc. Nos. 119 at 12; 128 at 2–6.) Since no additional issues concerning whether certification is warranted have been raised, the court will not repeat its prior analysis here, but instead reaffirms it and finds final certification appropriate. The following class is therefore certified: all current and former California residents

who worked for the defendants in the position of owner-operator and/or independent contractor truck driver at any time from February 9, 2011 through April 15, 2018.

In addition, the following plaintiffs are confirmed as class representatives: Jasbir Singh, Bany Lopez, Julio Vidrio, James Sliger, Derrick Lewis, Jerry Leininger, Kristopher Spring, Jerry Wood, Cappelli Burless, Robert Haskins, Douglas Luis, Paul Bonner, Christopher Cross, Leo Lewis, Richard Love, Wilfred Mcgirt, Nicholas Rich, and Latrina Phillips. The law firms of Kabateck Brown Kellner LLP and Wagner Jones Kopfman & Artenian LLP are confirmed as co-class counsel, and CPT Group, Inc. is confirmed as the settlement administrator.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The settlement agreement was previously filed on the court docket (Doc. Nos. 112-3; 123-1), and class members have been given an opportunity to object thereto. The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A.    Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class

3

notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the notice of class certification at the preliminary approval stage and found it to be satisfactory. (Doc. No. 119 at 19.) No material changes were made to the notice of class certification when the court granted a modification to the order granting preliminary approval. (*See* Doc. No. 128.) Following the grant of preliminary approval, the settlement administrator mailed the notice of settlement to 896 class members on the class list. (Doc. No. 131 at 21.) Seventy-nine notices, which were less than one percent of all the notices sent, were initially returned to the settlement administrator. (*Id.* at 21–22.) After resending the notices to forwarding addresses and performing skip trace searches, only eighteen of the class notices remained undeliverable. (*Id.* at 22.)

Given the above, the court concludes adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds sufficient notice has been provided satisfying Federal Rule of Civil Procedure 23(e)(1).

**B.     Final Fairness Hearing**

On January 8, 2019, the court held a final fairness hearing, at which class counsel and defense counsel appeared. No class members, objectors, or counsel representing the same appeared at the hearing. The court now determines that the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

/////

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties have reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members," because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to

revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Id.* at 1224–25.

1. Strength of Plaintiffs' Case

When assessing the strength of plaintiffs' case in this context, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). The court cannot reach such a conclusion, because evidence has not been fully presented. *Id*. Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Here, class counsel acknowledges that recovery on the merits in this case is uncertain due to several issues of unsettled law. (*See* Doc. Nos. 111 at 25; 118 at 3–10; 116.) First, defendants may be able to assert various affirmative defenses to plaintiffs' claims, which may detract from plaintiffs' recovery. (Doc. No. 118 at 3–10.) Second, plaintiffs state that it is unsettled whether

the California Labor Code may be applied to work performed outside of the state, which could subject drivers to less favorable out-of-state laws. (*Id.*) Third, plaintiffs note that defendants would likely argue that their piece-rate formula was nearly identical to a pay formula found to be lawful in another federal case involving a truck driver compensation system. *See Aguirre v. Genesis Logistics*, No. SACV 12-00687-JVS (ANx), 2013 WL 10936036 (C.D. Cal. July 3, 2013) (finding that defendant's compensation plan separately and directly compensated employees for pre- and post-shift activities that do not qualify for piece-rate compensation and was thus in compliance with California law). Therefore, while plaintiffs potentially have meritorious claims, it is far from certain that they would have prevailed on those claims, given the unsettled nature of relevant case law.

2. <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Through Trial</u>

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059 KJM AC P, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 09–00704, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Here, plaintiffs continue to voice their serious concerns regarding the impact of prolonged class action litigation on defendants' financial condition and, in turn, upon defendant's ability to pay the settlement. Moreover, class certification remains highly contested between the parties, and absent a settlement, would likely result in continued litigation, delays, and potential appeals. (*Id.*) By contrast, the proposed settlement in this action provides compensation that is available now, without the additional time and risk of a decision that would likely be subject to a lengthy appeals process.

/////

/////

7

3.     The Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the proposed settlement is for a common fund of $9.25 million dollars. The common fund provides for: (1) $7,500 enhancement awards to each of the representative plaintiffs; (2) payment of attorneys' fees to class counsel in the amount of one-third (1/3) of the common fund ($3,083,333.33); (3) class counsel's costs and expenses of approximately $76,149.55; (4) settlement administration fees to CPT Group, Inc. of $12,000; and (5) a PAGA payment to the California Labor and Work Force Development Agency not to exceed $75,000.00. (Doc. No. 131 at 15.) Plaintiffs have calculated that if these consolidated cases were to proceed to trial and they were to prevail on every claim, the maximum damages to be awarded the class members would be approximately $77,248,533, exclusive of penalties, interest, and the value of the PAGA claim. (Doc. No. 111 at 36.)

After these deductions from the gross common fund, plaintiffs report that the net settlement amount will be an estimated amount of $5,868,517.01, which will be allocated to class members on a pro-rata basis. (Doc. No. 131 at 15.) Because there are now 896 members in the class, the court calculates that, on average, each class member would receive an individual settlement payment of approximately $6,550. The court has previously assessed the risks faced by plaintiffs here, and has found the amount offered in settlement of these actions to weigh in favor of final approval.

/////

8

### *a.* *PAGA Penalty Claims*

Civil penalties recoverable under PAGA are being settled here for $100,000, of which 75%, or $75,000, will be paid to the Labor Workforce Development Agency ("LWDA") and 25%, or $25,000, will be paid to the entire class. (Doc. Nos. 112-3 at 12; 131 at 15.) In the order granting preliminary approval, the court directed plaintiffs' counsel to address the estimated value of the PAGA claim in their motion for final class certification. (Doc. No. 119 at 11.)

In the class action context, where PAGA claims often also appear, a district court must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Heritage Bond Litigation*, 546 F.3d 667, 674–75 (9th Cir. 2008). In one case, the LWDA has provided some guidance regarding court approval of PAGA settlements. *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), Doc. No. 736 at 2–3. In that case, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stressed that:

> [W]hen a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also Salazar v. Sysco Central California, Inc.*, No. 1:15-cv-01758-DAD-SKO, slip op. at 4 (E.D. Cal. Feb. 2, 2017) (quoting the same with approval); *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 942 (N.D. Cal. 2016) (PAGA penalties must be included in an estimate of a maximum realistic award); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016) (denying preliminary approval of proposed settlement in light of the unfair and inadequate settlement of claims under PAGA).

/////

Here, plaintiffs stated that there are 252 class members[1] who worked a total of 8,829 work weeks that fall within the statute of limitations period for the purposes of calculating PAGA penalties. (Doc. No. 131 at 14.) Plaintiff Latrina Phillips sought PAGA penalties for violations of sections 226, 226.3, 226.7, 226.8, 1174, 1194, 1197, and 2802 of the California Labor Code. (*Id.*) If plaintiffs were able to establish each of these underlying violations, the total maximum value of PAGA penalties that plaintiffs could seek would be approximately $14,224,000. (*Id.*) However, to do so, plaintiffs would have to be able to stack PAGA penalties for separate violations together. (*Id.* at 15.) Further, courts can reduce PAGA penalties "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *See* Cal. Lab. Code § 2699(e)(2).

The proposed $100,000 penalty payment in this case represents approximately one percent of the estimated $9.25 million gross settlement amount and will be allocated across the entire class. The court has previously approved comparable PAGA penalties in other class actions. *See Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving $100,000 PAGA penalty for a California class with a $3.95 million gross settlement payment); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 PAGA penalty for a California class with a $3.7 million gross settlement payment). Having reviewed the parties' submission and the terms of the proposed settlement, the court finds that the settlement amount related to plaintiffs' PAGA claims is fair, reasonable, and adequate in light of the public policy goals of PAGA.

Because of the concrete risks attendant with the pursuit of further litigation in this action articulated above, the court finds that the amount offered in settlement of the PAGA claims weighs in favor of final approval of the settlement.

/////

/////

---

[1] Out of the three consolidated cases, the *Phillips* action was the only action in which plaintiffs asserted a PAGA claim. However, at the hearing for final approval of the settlement agreement, plaintiffs' counsel indicated that the value of the PAGA settlement would nonetheless be spread across the entire settlement class.

10

4. <u>Extent of Discovery Completed</u>

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Here, the parties engaged in significant and comprehensive written discovery and took nearly thirty depositions, including those of the plaintiffs, witnesses, defendants' current and former employees, and persons most knowledgeable in California and Georgia. (Doc. Nos. 119 at 3; 131 at 19–20.) Class counsel represents that this discovery took considerable time and effort to obtain and was critical to informing the settlement discussions. (*Id.*) Based on these representations by counsel, the court is satisfied that the parties' negotiation constituted genuine, informed, arm's length bargaining.

5. <u>Experience and Views of Counsel</u>

Co-class counsel Daniel M. Kopfman and Brian S. Kabateck have filed declarations in support of the motion for preliminary approval, detailing extensive experiences in litigating wage and hour class actions, especially in the transportation context. (Doc. Nos. 111-1, 112-2.) Based on their experience and qualifications, investigation of the disputed factual and legal issues involved in this case, and evaluation of the risks of continued litigation, both attorneys Kopfman and Kabateck conclude that the settlement is fair and reasonable. (Doc. Nos. 111-1 at ¶ 9; 112-2 at ¶ 11.) Consideration of class counsel's experience and expressed opinions in this regard also weigh in favor of final approval of the settlement.

6. <u>Reaction of the Class to Proposed Settlement</u>

The absence of objections to a proposed class action settlement supports the conclusion that the settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way*,

*Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

According to the declaration of Emilio Cofinco, case manager at CPT Group, Inc., no member of the class has filed an objection to the settlement pending before the court for final approval. (Doc. No. 131-2 at ¶ 11.) Similarly, no class members appeared at the final fairness hearing to raise any objections to the settlement. Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

7. <u>Subtle Signs of Collusion</u>

The court now turns to a review of whether any of the "more subtle signs" of collusion noted by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). That said, the proposed attorneys' fees award is not disproportionate to the monetary distribution that the class will receive, and there is no reversionary clause in the settlement agreement.

However, the settlement agreement does include a "clear sailing" provision, in which defendant has agreed not to object to, oppose, or otherwise contest class counsel's award of attorneys' fees or costs. (*See* Doc. No. 131 at 23.) Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (citation omitted), the existence of a clear sailing provision is not necessarily fatal to final approval. Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at 954). In the analysis of attorneys' fees undertaken below, the court finds that the requested fees are justified and do not betray the class's interests.

/////

/////

12

On balance, the court is satisfied that the settlement is not the product of collusion, and therefore concludes that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS

**A.     Attorneys' Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

In a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. California Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

The California Supreme Court recently clarified that the percentage-of-fund method of calculating attorneys' fees remains appropriate under California law. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016). Thus, under California law a court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Id.* at 503. The California Supreme Court also suggested that considerations of the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel, and a lodestar cross-check are all appropriate means of discerning an appropriate percentage award in a common fund case. *Id.* at 504. Notably, while the California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases. *Id.* at 495, 503–06. In

13

common fund percentage award cases, the Ninth Circuit has similarly provided a non-exhaustive list of factors to use in assessing the reasonableness of the award, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55 (internal quotation marks omitted) (quoting *Vizcaino*, 290 F.3d at 1047–50). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

Here, plaintiffs' attorneys seek an award of attorneys' fees equal to one-third, or 33%, of the common fund. (Doc. No. 132 at 15–29.) Numerous factors support this requested award. This litigation was pursued purely on a contingency-fee basis, and plaintiffs' counsel devoted approximately 2,600 hours and almost $75,649.55 in out-of-pocket expenses to litigating the case over almost four years. (*Id.* at 22–24; 26–28.) Absent successful resolution, none of this attorney time would have been compensated. (*Id.* at 20.) *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Plaintiffs' attorneys also successfully vindicated the rights of nearly nine hundred workers and secured more than nine million dollars in relief. Further, counsel for plaintiffs are seasoned and experienced litigators of wage-and-hour class actions. Consideration of each of these factors supports a 33% award of attorneys' fees here.

The court next turns to the lodestar amount to cross-check the reasonableness of the requested attorneys' fee award. Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the

courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

Here, plaintiffs' counsel represents that nineteen different attorneys at three law firms (Kabateck LLP, Wagner, Jones, Kopfman, & Artenian LLP, and the Emilio Law Group) worked on this case for times ranging between 1.5 and more than 700 hours. (Doc. No. 132 at 26–27.) These attorneys billed approximately 2,600 hours at rates between $330 and $550 for associates and senior associates, and $500 and $890 for senior counsel and partners. (*Id.*)

| Attorney Name | Firm | Position | Admission | Years | Plaintiffs' Counsel Rates | | |
|---|---|---|---|---|---|---|---|
| | | | | | Rate | Hours | Lodestar |
| Brian S. Kabateck | KBK | Partner | 1991 | 27 | $810 | 265.6 | $215,136.00 |
| Joshua Haffner | KBK | Partner | 1997 | 21 | $750 | 6.1 | $4,575.00 |
| Anastasia Mazzella | KBK | Partner | 2006 | 12 | $750 | 23.5 | $17,625.00 |
| Shant A. Karnikian | KBK | Senior Associate | 2012 | 6 | $550 | 327.4 | $180,070.00 |
| Kevin Conlogue | KBK | Senior Associate | 2012 | 6 | $550 | 29.8 | $16,390.00 |
| Cheryl A. Kenner | KBK | Associate | 2015 | 3 | $425 | 640.72 | $272,306.00 |
| Joana Fang | KBK | Associate | 2015 | 3 | $425 | 5.3 | $2,252.50 |
| Justin Spearman | KBK | Associate | 2015 | 3 | $425 | 6.6 | $2,805.00 |
| Shelly Gill | KBK | Associate | 2015 | 3 | $425 | 8.2 | $3,485.00 |
| Nicholas R. Moreno | KBK | Associate | 2016 | 2 | $350 | 1.5 | $525.00 |
| Andrew Jones | WJKA | Partner | 1977 | 41 | $890 | 41.4 | $36,846.00 |
| Lawrence Artenian | WJKA | Partner | 1981 | 36 | $850 | 90.4 | $76,840.00 |
| Nicholas Wagner | WJKA | Partner | 1983 | 34 | $830 | 153.6 | $127,488.00 |
| Daniel Kopfman | WJKA | Partner | 1997 | 21 | $730 | 700 | $511,000.00 |
| Angela Martinez | WJKA | Associate | 2014 | 4 | $410 | 53.7 | $22,017.00 |
| Laura Brown | WJKA | Associate | 2015 | 3 | $330 | 18.2 | $6,006.00 |
| Daniel G. Emilio | ELG | Partner | 1992 | 26 | $500 | 46.8 | $23,400.00 |
| Justin G. Schmidt | ELG | Senior Associate | 2007 | 11 | $400 | 127.5 | $51,000.00 |
| Laurie M. Cortez | ELG | Associate | 2013 | 5 | $350 | 48.3 | $16,905.00 |

The rates employed by plaintiffs' counsel in calculating the lodestar are higher than others that have been approved in similar class action settlements in Eastern District of California cases. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (approving rates between $370 and $495 for associates

15

and $545 and $695 for senior counsel and partners in conducting a lodestar cross-check); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2017 WL 2289342, at *7 (E.D. Cal. May 25, 2017) (approving rates between $175 and $400 for attorneys in conducting a lodestar cross-check); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (applying rates of $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (applying rates of between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Indeed, the rates proffered by plaintiffs' counsel are even higher than those that have been approved by other district courts in this circuit, as cited by plaintiffs' counsel themselves. (Doc. No. 132 at 25.) *See, e.g., Aarons v. BMW of N. Am.*, No. 11- 7667-PSG, 2014 WL 4090564, at *40–41 (C.D. Cal. Apr. 29, 2014) (awarding rates ranging from $775 per hour for the requested partner to $390–$630 per hour for other attorneys); *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (approving hourly rates of $650–$800 for senior attorneys in a class action); *Anderson v. Nextel Retail Stores, LLC*, No. CV

07-4480, 2010 WL 11506729, at *3–5 (C.D. Cal. June 30, 2010) (approving $655 to $750 an hour for partners and $300 to $515 an hour for associates). Plaintiffs' counsel does not identify any case in which rates as high as $890 per hour have been approved in this circuit, much less this district.

For these reasons, the court finds it reasonable to downward adjust the hourly rates for the attorneys to the following for the purposes of conducting the lodestar cross-check in this case:

| Attorney Name | Firm | Position | Admission | Years | Downward Adjustment | | |
|---|---|---|---|---|---|---|---|
| | | | | | Rate | Hours | Lodestar |
| Brian S. Kabateck | KBK | Partner | 1991 | 27 | $720 | 265.6 | $191,232 |
| Joshua Haffner | KBK | Partner | 1997 | 21 | $720 | 6.1 | $4,392 |
| Anastasia Mazzella | KBK | Partner | 2006 | 12 | $720 | 23.5 | $16,920 |
| Shant A. Karnikian | KBK | Senior Associate | 2012 | 6 | $550 | 327.4 | $180,070 |
| Kevin Conlogue | KBK | Senior Associate | 2012 | 6 | $550 | 29.8 | $16,390 |
| Cheryl A. Kenner | KBK | Associate | 2015 | 3 | $425 | 640.72 | $272,306 |
| Joana Fang | KBK | Associate | 2015 | 3 | $425 | 5.3 | $2,253 |
| Justin Spearman | KBK | Associate | 2015 | 3 | $425 | 6.6 | $2,805 |
| Shelly Gill | KBK | Associate | 2015 | 3 | $425 | 8.2 | $3,485 |
| Nicholas R. Moreno | KBK | Associate | 2016 | 2 | $350 | 1.5 | $525 |
| Andrew Jones | WJKA | Partner | 1977 | 41 | $720 | 41.4 | $29,808 |
| Lawrence Artenian | WJKA | Partner | 1981 | 36 | $720 | 90.4 | $65,088 |
| Nicholas Wagner | WJKA | Partner | 1983 | 34 | $720 | 153.6 | $110,592 |
| Daniel Kopfman | WJKA | Partner | 1997 | 21 | $720 | 700 | $504,000 |
| Angela Martinez | WJKA | Associate | 2014 | 4 | $410 | 53.7 | $22,017 |
| Laura Brown | WJKA | Associate | 2015 | 3 | $330 | 18.2 | $6,006 |
| Daniel G. Emilio | ELG | Partner | 1992 | 26 | $500 | 46.8 | $23,400 |
| Justin G. Schmidt | ELG | Senior Associate | 2007 | 11 | $400 | 127.5 | $51,000 |
| Laurie M. Cortez | ELG | Associate | 2013 | 5 | $350 | 48.3 | $16,905 |

As a result of these adjustments, plaintiffs' counsels' estimated lodestar of $1,586,671.50 will be adjusted downward to a new lodestar of $1,519,194. The original rates resulted in a multiplier of 1.94, but the downward adjusted rates result in a multiplier of approximately 2.03,

17

which is still clearly in the range that courts have found to be acceptable. Thus, consideration of the lodestar cross-check also supports the reasonableness of an award of attorneys' fees equal to one-third of the total fund in this case.

**B.     Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

Plaintiffs' counsel requests reimbursement of their expenses in the amount of $75,649.55 and anticipated future costs of $500.00 for a total of $76,149.55. (Doc. No. 132 at 28.) At the hearing, plaintiffs' counsel stated that future costs would not exceed $500.00. Any costs that are approved by the court but not actually incurred by counsel shall be returned to the common fund. The court finds all the expenses incurred to be reasonable and will approve their reimbursement in the amount requested.

**C.     Incentive Award**

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and in considering the amount of such awards the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting

18

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiffs seek an incentive award of $7,500 for each of the eighteen named plaintiffs in these consolidated actions. (Doc. No. 132 at 29–31.) At the hearing on the pending motion, plaintiffs' counsel described how each named plaintiff expended a great deal of time and effort in assisting co-class counsels' prosecution of these three cases, by responding to discovery requests and preparing and appearing for depositions—participation in which required missing work and accepting the risks of protracted class action litigation. Additionally, plaintiffs' counsel explained that the numerous named plaintiffs originate from each of the three separate actions that were consolidated and represent drivers from all of the trucking companies that were acquired by defendants. Finally, under the settlement, each named plaintiff will enter into a broad release of claims, including a waiver as to any claims they do not know of or suspect to exist in their favor against any of the released parties. (Doc. No. 111 at 34.) Considering these factors, the court finds that an incentive award of $7,500 for each of the named plaintiffs is appropriate under the circumstances of this case.

## CONCLUSION

For the reasons stated above:

1. Plaintiffs' motion for final approval of the settlement (Doc. No. 131) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;
2. Plaintiffs' motion for attorneys' fees, costs, and incentive awards (Doc. No. 132) is granted, and the court awards the following sums:
   a. Class counsel shall receive $3,083,333.33 in attorneys' fees, and up to $76,149.55 in expenses, with any unspent expense amount being returned to the common fund;
   b. Named plaintiffs shall each receive $7,500 as incentive payments;
   c. CPT Group, Inc. shall receive $12,000 in settlement administration costs and expenses; and

/////

   d. The parties shall direct payment of 75 percent of the settlement allocated to the PAGA payment, or $75,000, to the California Labor and Workforce Development Agency, as required by California law, and the remainder of the PAGA payment, or $25,000, shall be included in the class fund;

3. All parties are directed to abide by the settlement agreement, including any deadlines or procedures for distribution included therein, and take all necessary steps to complete and administer the settlement in accordance therewith; and

4. The court retains jurisdiction to consider any further applications arising out of or in connection with the parties' settlement.

IT IS SO ORDERED.

Dated: **January 24, 2019**

                UNITED STATES DISTRICT JUDGE